94 F.3d 651
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jack C. HALE, Plaintiff-Appellant,
v.
Burt WARD; Jane Doe Ward, husband and wife, and their
marital community; Pinnacle Associates, Inc., a
Delaware corporation, Defendants-Appellees.
 No. 94-36145.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 10, 1996.
Decided Aug. 12, 1996.
 
 Before: BROWNING, WRIGHT, and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jack Hale appeals from the district court's summary judgment in favor of Burt Ward in Hale's diversity action for breach of a promissory note secured by shares of common stock in Pinnacle Associates, Inc., of which Ward was Chief Executive Officer. We have jurisdiction under 28 U.S.C. § 1291. We reverse the judgment of the district court and remand for further proceedings because there are genuine issues of material fact regarding whether Ward or Ward's agent wrongfully interfered with Hale's possession of the collateral.
 
 I. BACKGROUND
 
 3
 When Ward defaulted on the loan in December 1988, Hale obtained possession of the Pinnacle stock certificates that served as collateral. Although Hale claims he had been told that in the event of a default he would be able to sell the shares, the certificates bore a legend indicating that they were restricted securities and that an opinion letter from Pinnacle's counsel was required for sale.
 
 
 4
 Hale retained counsel, Jack Orr, to assist him in selling the shares. When Orr telephoned Ward to discuss sale of the shares, Ward told Orr that it was not a good time to sell and that sale would adversely affect the price of Pinnacle shares. Hale nevertheless wished to proceed with the sale, so Orr contacted Pinnacle's transfer agent to inquire about the documentation required for sale. Pinnacle informed Orr that a legal opinion from Pinnacle's counsel was necessary and that the shares could not be sold at that time because Pinnacle was not in compliance with federal securities law.
 
 
 5
 In mid-May of 1989, Pinnacle informed Orr that it had filed the reports necessary to bring it into compliance with federal securities laws. Orr sent the certificates to Pinnacle's counsel, George Berger, with a letter indicating that Hale wished to qualify for sale the maximum number of shares possible. On June 5, 1989, Berger contacted Orr by telephone. Berger stated that Ward had confirmed that he had defaulted on the note, but that "we are not going to countenance a windfall to Hale." At that time, the stock apparently was selling for $3.00 per share.
 
 
 6
 Orr subsequently sent Ward a letter, dated June 12, 1989, stating that "Mr. Hale intends to retain possession of the 100,000 shares of Pinnacle Associates, Inc. common stock in satisfaction of your obligation to him." At the time Orr sent this letter, Berger was in physical possession of the certificates.
 
 
 7
 Berger or Ward maintained physical possession of the certificates throughout the rest of 1989. In a letter dated December 5, 1989, Orr threatened to file suit against Ward and members of Berger's law firm, Berger & Paul, unless Ward or Pinnacle delivered $125,000 or 100,000 shares of free-trading Pinnacle common stock by December 22, 1989. Berger & Paul responded with a letter stating that their client, Ward, never instructed them to prepare an opinion letter, and that absent such authorization they would not issue the letter.
 
 
 8
 In a subsequent letter, dated January 24, 1990, Berger & Paul informed Orr that "[i]n a search through one of our Pinnacle files for certain documents, we coincidentally located the stock certificates you forwarded on May 19, 1989 which we believe had been sent to our client and subsequently misplaced." The firm returned the stock certificates along with the letter. Hale thus regained possession of the original share certificates, although he still had not received an opinion letter. In late January, 1990, new shares certificates were issued to Hale in his name. According to Hale, the shares had become worthless by the time they were returned to him. Hale did not attempt to sell the shares because of their diminished value, and has not recovered any money under the promissory note. Pinnacle since has gone out of business.
 
 
 9
 Hale filed an action against Ward in the Superior Court of the State of Washington in Douglas County on February 24, 1994. He sought to collect $100,000 on the promissory note, or alternatively to collect damages for negligence, fraud, and violation of the Washington State Securities Act. Ward removed the matter to district court and filed a motion for summary judgment. The district court dismissed all of Hale's claims with prejudice on October 28, 1994, finding that Hale had unambiguously elected to retain the collateral pursuant to Wash.Rev.Code § 62A.9-505(2). Hale appeals from the district court's summary judgment in Ward's favor only with regard to his claim under the promissory note.
 
 II. ANALYSIS
 
 10
 We review de novo the district court's grant of summary judgment. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). Viewing the evidence in the light most favorable to Hale, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 
 11
 A. Sufficiency of Hale's Notice to Retain the Collateral
 
 
 12
 Revised Code of Washington § 62A.9-505(2) provides, in relevant part, that
 
 
 13
 [in] any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection.... If the secured party receives an objection in writing from a person entitled to receive notification within twenty-one days after the notice was sent, the secured party must dispose of the collateral.... In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation.
 
 
 14
 Wash.Rev.Code § 62A.9-505(2) (1995) (emphasis added).
 
 
 15
 As the district court indicated, there is no doubt that the June 12, 1989 letter written on behalf of Hale stated an unequivocal intent to elect to retain the collateral pursuant to Wash.Rev.Code § 62A.9-505(2). Although Hale was not in actual physical possession of the certificates at the time he sent the letter, he had delivered the certificates to Berger for an opinion letter and any further action needed to enable reissue of unrestricted certificates in Hale's name. At least in its inception, Hale's delivery of the shares to Berger created a bailor-bailee relationship. See Maulding v. United States, 257 F.2d 56, 60 (9th Cir.1958). Berger was aware of Hale's interest in the collateral at the time he received the certificates. Because possession of collateral by a bailee who has notice of the secured party's interest is considered to be possession by the secured party, Hale remained in constructive possession of the shares even when he relinquished physical possession of the certificates to Hale. See Wash.Rev.Code § 62A.9-305 (1995) (a secured party is deemed to have possession of the collateral from the time the bailee receives notification of the secured party's interest); Kruse, Kruse & Miklosko, Inc. v. Beedy, 353 N.E.2d 514, 539 (Ind.Ct.App.1976); see also 9A Ronald A. Anderson, Uniform Commercial Code § 9-505:9 (3d ed. 1994). Thus the fact that Hale had sent the share certificates to Berger did not ipso facto prevent Hale from making an election as a "secured party in possession" of the collateral within the meaning of section 62A.9-505(2).
 
 
 16
 B. Ward's Alleged Interference with Hale's Right to Possess the Collateral
 
 
 17
 There are genuine disputes of fact, however, as to whether Ward, through Berger or by other means, intentionally defeated the purposes of the bailment and the possession of Hale, preventing Hale from realizing on his security. If so, we conclude that Hale would not be bound by his intended election under section 62A.9-505(2). A somewhat comparable situation was presented in Matter of Amador, 596 F.2d 428 (10th Cir.1979). There a creditor was secured by the debtor's inventory, which the debtor wrongfully depleted. The creditor took possession of the remaining inventory, and the debtor argued that the debt was discharged by the creditor's election, pursuant to the New Mexico statute identical to section 62A.9-505(2). The Tenth Circuit rejected the argument, stating that "[t]o apply section 50A-9-505 under such circumstances to enable appellants to avoid the consequences of their wrong doing ... would be incompatible with not only the spirit of the statute but with the equity that must characterize bankruptcy proceedings." Amador, 596 F.2d at 431-32; see also 9A Anderson, Uniform Commercial Code § 9-505:24.
 
 
 18
 We recognize that there are distinctions between Amador and this case. This is not a bankruptcy proceeding, and the actions of Ward and Berger did not force Hale to make his initial election. But the principle of Amador applies; the debtor may not invoke section 62A.9-505(2) to bind the creditor to an election that the debtor, by his wrongdoing, frustrates. We are confident that the Supreme Court of Washington would not apply the statute to the creditor's detriment in that situation.
 
 
 19
 Although Hale made his election in June 1989, Berger did not return the certificates to Hale until late January 1990. The value of the shares plummeted during the nearly eight months that Berger or Ward maintained possession of them. If Berger or Ward acted wrongfully in retaining the certificates without carrying out Hale's directions, or otherwise acted wrongfully to defeat Hale's recovery of possession and realization on his security, then Hale is not bound by his election. Hale has presented evidence, including that regarding Ward's resistance to Hale's selling the shares throughout the Spring of 1989, and Berger's supposed misplacement of the certificates until after Hale threatened litigation and the shares had become virtually worthless, that raises genuine issues of material fact regarding whether Ward or Berger wrongfully interfered with Berger's right of possession. For this reason, we conclude that the district court erred in granting summary judgment against Berger on his claims for breach of the promissory note and security agreement.
 
 III. CONCLUSION
 
 20
 There are genuine issues of fact that are material to determining whether Hale should be bound to his election to retain the collateral and thereby be precluded from maintaining an action under the original obligation. We reverse and remand to the district court for further proceedings.
 
 
 21
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3