In re Sylvia Delain Teague
WRIGHT, Debtor.

The BOARD OF TRUSTEES OF the UNI-
VERSITY OF ALABAMA for the Uni-
versity of Alabama in Birmingham,
Plaintiff,

v.

Sylvia Delain Teague WRIGHT,
Defendant.

Bankruptcy No. 79–03567.
AP 80–0791.

United States Bankruptcy Court,
N. D. Alabama, S. D.

Nov. 13, 1980.

Salem N. Resha, Jr., of Silberman, Silber-
man & Loeb, Birmingham, Ala., for debtor-
defendant.

Robert H. Woodrow, III, Birmingham,
Ala., for plaintiff.

OPINION

STEPHEN B. COLEMAN, Bankruptcy
Judge.

This case involves yet another feature of
the problems arising from the rash of stu-
dent loans in bankruptcy cases and relates
to a matter of procedure and, incidentally,
jurisdiction in other Courts.

Many years ago the Federal Courts re-
garded the determination of the effect of
the discharge as a matter of no concern to
Bankruptcy Courts, even going so far as to
rule lack of power in the court to "split" the
discharge or entertain complaints to deter-
mine the effect of a discharge.[1]

1. "Once the discharge was granted its effect on
any particular creditor's claim was to be deter-
mined by the non–bankruptcy court in which
the creditor attempted to enforce the claim. *In
re Scheffler*, 68 F.2d 902 (2d Cir. 1934); *Teu-
bert v. Kessler*, 296 F. 472 (3rd Cir. 1924); *In re
Havens*, 272 F. 975 (2d Cir. 1921); *Hellman v.
Goldstone*, 161 F. 913 (3rd Cir. 1908); *In re
Madder [Madden]*, 257 F. 581 (D.N.J.1919); *In
re Weisberg*, 253 F. 833 (E.D.Mich.1918); *In re
Boardway*, 248 F. 364 (N.D.N.Y.1918); *In re
McCarty*, 111 F. 151 (N.D.Ill.1901); *In re Mus-
sy*, 99 F. 71 (D.Mass.1900); *In re Rhutassel*, 96
F. 597 (N.D.Iowa 1899); *In re Carmichael*, 96 F.
594 (N.D.Iowa 1899); *In re Thomas*, 92 F. 912
(S.D.Iowa 1899); *Local Loan Co. v. Hunt*, 292
U.S. 234, 241–42, [54 S.Ct. 695, 697, 78 L.Ed.
1230,] 92 A.L.R. 195, 199–200 (1934)." Those
decisions which acceded to creditors' request
that the debtor be granted a "split discharge"
from which certain claims were expressly ex-
cepted were building upon, and many were
obviously influenced by, the earlier established
practice of granting a "split discharge" in an-
other area–a discharge which expressly except-
ed claims scheduled in an earlier bankruptcy
proceeding in which the bankrupt was either
denied or failed for any reason to obtain his
discharge, on the theory that the prior proceed-
ing was *res judicata* as to the bankrupt's right
to a discharge of those debts. In a double cut
of *res judicata* the Supreme Court not only
sanctioned the practice but, from the creditors'
point of view, made it imperative. Not only
was the granting of a split discharge proper in
the second proceeding, *Freshman v. Atkins*,
269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925),
but, if creditors failed to raise the issue in the
second proceeding, the granting of a general
discharge in that proceeding would bar them
from raising it thereafter, *Bluthenthal v. Jones*,
208 U.S. 64, 28 S.Ct. 192, 52 L.Ed. 390 (1908).

Much divergence of opinion existed and there were some who "split discharges" and some who didn't. The controversy really revolved around the question of who would do the work–hear complaints, and resolve issues and disputes. Public and legal opinion crystalized in favor of the Bankruptcy Court's duty to assume the burden as a "One Stop Place" to accomplish complete redress.[2] Although this idea spread and the momentum increased, Congress did not actually respond and catch–up with accepted practice and reality until the Dischargeability Act of 1970.[3] A great change in Bankruptcy jurisdiction was authorized, which was soon followed by the Bankruptcy Rules of Procedure in 1973.[4] The effect of these innovations was to, without question, put the duty and burden on the Bankruptcy Court to hear and determine dischargeability matters and complaints. But, note, as is well known, such debts as taxes, alimony,

support and maintenance, non–scheduled debts, and some others were automatically not affected and survived the discharge without necessity of an express order. The more familiar approach was by reference to the famous exceptions to (2), (4), and (6) of Old Section 17(c) which were barred upon failure to seek relief in the Bankruptcy Court prior to discharge.[5]

This is familiar ground to old practitioners and would hardly be worth mentioning, except for new lawyers to whom this is ancient history and the advent on the scene of student loans.

The writer has had occasion to make a very brief reference to the development of the Federal Insured Student Loan Program (FISLP), which Congress implemented as Title IV, Part B, of the Higher Education Act of 1965, and by legislation in 1968 and 1969.[6]

Countryman, "The New Dischargeability Law," 45 A.B.L.J. 9–10, (Winter, 1971).

2. Coleman, "One Stop Service, A Plea For More Jurisdiction," p. ——, Referees Journal, 1947.

3. Section 17 was extensively amended in 1970 by the addition of subdivisions b and c and by a reshuffling of the classes of nondischargeable debts listed in § 17(a). In this last respect the substance of what constitutes nondischargeable debts was not affected in any way; the changes were, rather, in the way of separating some out from others and renumbering clauses. Subdivision c, together with § 14(b), (f), (g), and (h), § 2(a)(12), and § 38, empower the bankruptcy court to determine the dischargeability of particular debts, a type of jurisdiction not generally possessed prior to the amendments of 1970. 1A Collier on Bankruptcy, 14th Ed. 1580–1580.1.

4. 28 U.S.C. § 2075.

5. New § 17(c)(1) provides that, "The bankrupt or any creditor may file an application with the (bankruptcy) court for a determination of the dischargeability of any debt." Since this provision is optional, and if the option is not exercised the issue of dischargeability would still be left for determination by any nonbankruptcy court in which a creditor might bring action on his claim, the draftsman spoke of the cases comprehended by § 17(c)(1) as those in which nonbankruptcy courts have "concurrent jurisdiction." But the nonbankruptcy courts have such jurisdiction only if neither the bankrupt

nor the creditor submits the issue to the bankruptcy court. If either of them does so, § 17(c)(4) again authorizes the bankruptcy court to enjoin institution or continuation of other actions pending a determination of the issue by the bankruptcy court, and the bankruptcy discharge, if granted, will, pursuant to § 14(f), declare null and void, and will enjoin the creditor from enforcing, "any judgment theretofore or thereafter obtained in any other court . . . with respect to . . . debts determined to be discharged" by the bankruptcy court. Again, § 2(a)(15) seems adequate authority, if § 17(c)(4) is not, to authorize injunctions against collection efforts before discharge. Countryman, 45 A.B.L.J. 28–29, (Winter, 1971).

6. 20 U.S.C. 1087–3: § 439A. (a) A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act *only if such discharge is granted after the five–year period* (exclusive of any applicable suspension of the repayment period) *beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of the five–year period*, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents. (b) Subsection (a) of this section shall be effective with respect to any proceedings begun under the Bankruptcy Act on or after September 30, 1977. *United States of America v. Michael Joseph Hemmen*, 7 B.R. 63 (N.D.Ala., 1980) (Coleman, B. J.)

For a period of years the provisions relating to discharge of these types of debts were contained in legislation outside of and not an integral part of the Federal Bankruptcy Act, and at one time Congress unintentionally repealed all provisions making such debts nondischargeable causing some confusion and diversity of opinion.[7]

Our attention is now drawn to the provisions now contained in the Bankruptcy Code and, specifically to section 523(a)(8) and subsection (c). No duty is imposed on either party to seek a determination during the pendency of the bankruptcy proceeding. Options exists and the machinery for procedure is available. *This discussion relates to the abstention by the creditor from seeking relief in the bankruptcy court and its effect on the debtors' rights.*

Dischargeability of student loans is affected by two variables and questions of fact–age and "hardship." Unless the loan "first became due before five years before the date of the filing of the petition," the debt is not discharged unless "(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor ..."

What court decides these questions and when? Well, certainly the Bankruptcy Court, when asked to do so by proper complaint, will hear and decide the question. It has ample jurisdiction and the duty to hear complaints and objections to discharge.

■ Some differences of opinion exists whether student loan creditors must seek a ruling of nondischargeability in the bankruptcy proceeding. It has been suggested that if the debt has not existed for five years or more from due date, at which time suit could be brought, no burden exists on the holder to pursue his claim in bankruptcy. The Code is self–executing and Con-

7. Sections 317, 327, and 328 (in title III) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598 repealed Section 439A of the Higher Education Act of 1965, as amended in 1976, section 733(g) of the Public Health Service Act, and section 456(b) of the Social Security Act. The repeal is effective with respect to cases filed on November 6, 1978 (the enactment date of the Act–section 402(d) of the Act). 3 Collier, Pamphlet Ed. 702 (1979). Under section 402(a) of the BRA, this replacement provision did not become effective until October 1, 1979, approximately eleven months after the effective date of the repeal of its predecessor, 20 U.S.C. § 1087–3. According to many, this interruption in the rule of nondischargeability of student loans constitutes a loophole through which certain student loan debtors attempt to escape their repayment obligations. See *In re Utterback; Wisconsin Higher Education Aids Board v. Utterback*, 1 B.R. 199, 5 B.C.D. 1046 (Bkrtcy.N.D.Tex.1979); *In re Sawaya; Massachusetts Higher Education Assistance Corporation v. Sawaya*, 2 B.R. 37, 5 B.C.D. 1072 (Bkrtcy.D.Mass.1979); *In re King, Jr.; State of Ohio v. King, Jr.*, 5 B.C.D. 417 (S.D.Ohio 1979); *In re Johnson; Pennsylvania Higher Education Assistance Agency v. Johnson*, 5 B.C.D. 532 (E.D.Pa.1979); *In re Jones; University of Cincinnati v. Jones*, No. B–1–1804 (S.D.Ohio 1979); *In re Matthews; Matthews v. Connecticut Student Loan Foundation*, (1979) Bankr.L.Rep. (C.C.H.) ¶ 67,049 (D.Conn.1979); *In re Adams; Connecticut Student Loan Foundation v. Adams*, No. H–78–647 (D.Conn.1979); *In re Christopher; New York State Higher Education Services Corporation v. Christopher, et al.*, 5 B.C.D. 214 (W.D.N.Y. 1979); *In re Espronceda; Coordinating Board,* *Texas College and University System v. Espronceda*, 5 B.C.D. 267 (S.D.Tex.1979); see also *In re Amadori; New York State Higher Education Services Corporation v. Amadori, et al.*, 5 B.C.D. 187 (W.D.N.Y.1979). On the other hand, an equal number of courts have concluded that the repeal of 20 U.S.C. § 1087–3 was of no effect with regard to cases commenced prior to the effective date of the BRA, October 1, 1979, and have denied the petitions for discharge in bankruptcy of otherwise nondischargeable student loan debts on that basis. See *In re Henry; New York State Higher Education Services Corporation v. Henry*, 4 B.R. 495, 5 B.C.D. 1014 (Bkrtcy.S.D.N.Y.1979); *In re Erickson; Wisconsin Higher Educational Aids Board v. Erickson*, 5 B.C.D. 734 (E.D.Wis.1979); *In re Weinstein; Pennsylvania Higher Education Assistance Agency v. Weinstein*, 5 B.C.D. 503 (E.D.Pa.1979); *In re Kohn; New York State Higher Education Services Corporation v. Kohn*, 5 B.C.D. 419 (S.D.N.Y.1979); *In re Edson; Wisconsin Higher Educational Aids Board v. Edson*, 4 B.C.D. 1191 (D.Nev.1979); *In re Perkins; New York State Higher Education Services Corporation v. Perkins*, No. B–78–00749 (D.Utah 1979); See also *In Re Garetano; New York State Higher Education Services Corporation v. Garetano*, 79–C–953, 78–B–780 (E.D.N.Y.1979); *In re Markovitz; New York State Higher Education Services Corporation v. Markovitz*, CA–79–P–0576–S, B–78–01230 (N.D.Ala.1979); *In re Hawes, et al. v. New Jersey Higher Education Assistance Agency*, No. B78–28 (D.N.J.1979).

gress has declared such debts not discharged.[8] No findings of fact by the Bankruptcy Court is essential or necessary. The creditor is free to proceed in any court after discharge is granted. Congress has not forbidden or enjoined such action and has not barred post–petition suit. The bar that exists for failure of a student loan creditor to file complaint and seek determination prior to discharge relates only to his right to be heard in the Bankruptcy Court. The Code does not enjoin the creditor to seek such relief or prevent him from ignoring the debtor proceeding until after discharge granted. It bars him from adjudication by the Bankruptcy Court but not from relief altogether. As soon as the discharge is granted and the case closed, the creditor is free to proceed.

There will be interesting questions raised involving the burden of proof depending on which party initiates the complaint. Does the debtor prove that hardship will exist or is the burden on the creditor? *It would appear that the burden is on the creditor to show that the loan first became due before five years before the date of filing petition.* Otherwise the loan is *presumed* discharged. It is also possible that the maturities of various loans may be involved so that some may be barred and some not, each loan being represented by an individual note and separate debt.

It may require the exercise of sound judgment whether to appear and seek an adjudication of rights in the bankruptcy proceeding on the part of the creditor. On the other hand, the debtor may wish to have the matter adjudicated by the Bankruptcy Court and so expressly incorporated in his discharge. Although this right was formerly granted by sections 2(a)(12) and 17(c) of the Bankruptcy Act, it is assumed that such jurisdiction falls under the comprehensive terms of 28 U.S.C. 1471(b) and unquestionably now exists in the Bankruptcy Court. This procedure follows under section 350(b) of the Bankruptcy Code even after the case is closed "to accord relief" to the debtor and presumably to the creditor likewise.

To apply some of these principles to the case requires a recitation of the facts.

Sylvia Delain T. Wright received loans under the National Direct Student Loan Program and other student loan programs from The Board of Trustees of the University of Alabama for the University of Alabama in Birmingham, the initial loan being made on October 11, 1974, and fourteen (14) additional loans being made on subsequent dates, the final loan being made on April 21, 1978; such loans totaled $6,584 principal and interest to date. She attended classes and graduated in December, 1978. She has not paid any part of the student loans. She filed her petition on October 10, 1979, and received her discharge June 23, 1980, and the case was closed June 23, 1980. The University of Alabama in Birmingham filed its "Motion to set aside Judgment" on September 26, 1980, which has been treated as a petition to re–open the case and to seek determination of dischargeability of the University's student loan debts.

The debtor has filed a Motion For Summary Judgment on the ground that Plaintiff is barred for failure to file an objection to the discharge within the time allowed by law. It is apparent from what is said here that the debtor is not entitled to summary judgment and the MOTION IS DENIED and debtor is granted twenty (20) days to answer further.

---

8. See Senate Report which contains the statement that "This provision (523(a)(8)) is intended to be self–executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan."