John Henry YARBER, aka John H. Yarber, Marla Jean Yarber, Plaintiffs,

v.

DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, ITT Educational Services, Inc., Defendants.

In the Matter of John Henry YARBER, aka John H. Yarber, Marla Jean Yarber, Debtors.

Adv. No. 3–81–0743.

Bankruptcy No. 3–81–01529.

United States Bankruptcy Court, S. D. Ohio, W. D.

April 5, 1982.

Wendell D. Sellers, Dayton, Ohio, for defendant ITT Ed. Services, Inc.

Dan D. Weiner, Dayton, Ohio, for plaintiff.

Vanessa Walton, Asst. U. S. Atty., Dayton, Ohio.

Thomas B. Talbot, Dayton, Ohio, trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FINDINGS OF FACT

This matter is before the Court upon Complaint filed by the Debtor, requesting that John Yarber's student loan evidenced by a promissory note executed by Debtor and payable in installments to Defendant, ITT Educational Services, Inc. (hereinafter ITT) in the amount of $2,251.26, be discharged under 11 U.S.C. § 523(a)(8). The loan is a federally guaranteed student loan. The matter was set for trial and submitted on the testimony and evidence submitted by Plaintiff on 5 January 1982, there being no responsive pleading on file by either Defendant. The court made a finding at bar of an undue hardship on the Debtor under 11 U.S.C. § 523(a)(8)(B).

Upon review of the record preparatory to journalizing an order, the court discovered that proper service had been made upon ITT, but that there had been no service by the Clerk upon the United States Attorney as required by Rule, and the matter was set by the court *sua sponte* for retrial on 23 February 1982. Appearances were made by both named defendants at the hearing held on 23 February 1982 although the Court notes that no responsive pleadings had ever been filed. The U.S. Attorney elected at bar not to contest the Complaint. Defendant ITT was granted leave to submit a brief presenting legal arguments and citations as requested at the hearing conducted on 23 February 1982, although a proper appearance and responsive pleadings had not been filed within Rule. The following decision is based upon the evidence adduced at the trial on 23 February 1982, the brief in behalf of ITT filed on 9 March 1982, the brief filed in behalf of Plaintiff on 11 March 1982, and the record.

No evidence was submitted by Defendant ITT, either direct or by nature of impeachment of the testimony of Marla Jean Yarber. In repeating the testimony at the earlier hearing, she testified that she was the sole provider for herself and the Debtor, her husband, and that her income is only the minimum wage of $3.45 per hour at her employment by the Jewish Federation Covenant House (raised to $3.70 per hour after husband's bankruptcy petition). Her employment status had been only part-time, although she was of the opinion that full-time employment would ensue with income totalling about $5,000.00 per annum.

The Debtor had been unsuccessful in obtaining regular employment based upon the training received at ITT (although he had tried "hundreds of job applications"), and he is endeavoring to obtain training in another field. The meager income of Marla had not been sufficient to pay even basic living expenses for the couple (without children) including gas and electric of over $125.00 per month and large medical expenses for both. They have been unable to purchase clothing and have less than $40.00 per week for food. Their medical expenses had been excessive, both suffering from chronic medical conditions. They had been forced to discontinue all health insurance and their life insurance. To meet even such austere circumstances requires subsistence contributions from both mother and mother-in-law. Since Debtor had not been successful in obtaining employment he not only has no income, but is not entitled to unemployment compensation.

## CONCLUSIONS OF LAW

ITT does not dispute the above facts, but argues, as follows:

"Defendant respectfully submits that to grant debtors' request for dischargeability of plaintiff John Yarber's student loan debt, would be contrary to the intent of Congress. It is common knowledge, subject to judicial notice by this Court, that at the time Section 523 was enacted, there had been a history of tremendous delinquency in repaying student loans. Surely Congress did not intend that in the instance of a debtor becoming unemployed, and filing for relief under Chapter 7 of Title 11, a student debt would become dischargeable, without the requirement of showing extenuating circumstances. If this were Congress' intent, then in these troubled economic times, with rising unemployment, it must be assumed that a good percentage of student loan debts are entitled to discharge. To grant such discharges would ignore the very real possibility of many of these debtors securing gainful employment."

As authority for such a conclusion is cited *Warren v. University of Illinois*, 6 B.R. 233, B.L.D. ¶ 67711, 6 B.C.D. 1058 (Bkrtcy.S.D. Fla.1980), and *Rice v. University of South Dakota, et al.*, 13 B.R. 614, 4 C.B.C.2d 1343, 8 B.C.D. 55. (Bkrtcy.D.S.D.1981). It is further urged that, "The record of the case at bar is devoid of evidence of any effort to renegotiate repayment with ITT Educational Services, Inc., through deferment of forebearance."

The rationale of these decisions would be acceptable to the extent that a provisional hardship might exist which could be alleviated upon termination of a temporary misfortune, such as lack of employment acknowledged to be only for a forseeable term. Furthermore, repayment of an educational loan should not be deemed a "hardship" merely because meeting such an obligation necessitates deferral of other economic needs or preferences not basic to mere subsistence. Such a proposition by a debtor would demonstrate a lack of good faith effort, as contemplated by 11 U.S.C. § 523(a)(8)(B). Such are not the facts *instanter*. See discussion of historical derivation of the present statute in Collier on Bankruptcy, 15th ed. 3:523.18, at 523–132–3.

Since Debtor John Yarber executed the instant note on 23 September 1980, (and the note thus became due before five years before the date of the filing of the Debtor's Petition, as required by 11 U.S.C. § 523(a)(8)(A)), the sole issue before the Court is whether denial of dischargeability

of the student loan will impose an undue hardship on the Debtors under the exception incorporated in 11 U.S.C. § 523(a)(8)(B), which provides as follows:

> (8) to a governmental unit, or a nonprofit institution of higher education, for an educational loan, unless—(A) such loan first became due before five years before the date of the filing of the petition; or (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor *and the debtor's dependents* [emphasis added]

The exception created by "undue hardship" under 11 U.S.C. § 523(a)(8)(B) is discretionary with the Bankruptcy Court. The inquiry is whether payment of the debt will cause the debtor undue hardship and thus defeat the underlying legislative "fresh start" policy inherent in the Bankruptcy Code. In determining the dischargeability of liability for student loan, the "totality of the circumstances" approach is appropriate.

The Court finds the controlling factors to be the diminutive future income generating prospect of the debtor and the negligible enhancement of that earning capacity attributable to the education be received via the student loans.

In projecting the debtor's future income-generating capabilities, the Court observes that the Debtor is not a high school graduate and that although he has applied for hundreds of positions over the past two years, he has been unable to obtain other than short-lived, sporadic part-time employment.

The beneficial effects of the debtor's educational experience in terms of his employability is relevant to the inquiry into the issue of dischargeability of the student loan for undue hardship.

The rationale for judicial scrutiny of the extent to which a student debtor benefits from his education is based on equitable considerations. Not only is an ex-student whose earnings income has been substantially increased by this education more likely to repay his loan, but he also is more indebted to the lender on a quantum meruit theory. *Pennsylvania Higher Education Assistance Agency v. Johnson* 5 B.D.C. 532, 543 (Bk.Ed.Pa.1979).

The obverse should also be a factor. The Plaintiff has not benefitted from the successful completion of a two-year program in drafting except to the extent of less than one month's employment in the field, followed by sustained unemployment. The marketability of the Plaintiff's educationally-acquired skill has been reflected in his total lack of success in pursuing a career. Hence, the Court cannot find that the Debtor has benefitted financially or otherwise from the "education" which the loan helped to finance.

The Debtor has demonstrated good faith by his sustained effort to obtain employment. Further, expenditures have been minimized by limiting them to only those things necessary for survival. Despite this careful budgeting and the maximization of resources by the Debtor, there is still an insufficiency of funds to meet such basic needs as adequate medical care and insurance.

To deny the dischargeability of a student loan in a situation where the debtor is merely existing at below the subsistence level and who has minimal potential for substantial future improvement and has derived no discernible, tangible financial or employment benefits attributable to his student-loan-financed education would be contrary to the purpose of both the training rehabilitation contemplated by educational loan guarantees as well as the economic rehabilitation traditional in bankruptcy jurisprudence.

The debtor has demonstrated good faith in trying to obtain employment, despite chronic medical problems. See *Price v. United States of America*, 1 C.B.C.2d 647, (Bkrtcy.D.Hawaii 1980); *Connecticut Student Loan Foundation, Inc. v. Bagley*, 2 C.B.C.2d 251, 4 B.R. 248, 6 B.D.C. 404 (Bkrtcy.D.Ariz.1980); *Diaz v. New York State Higher Education Services Corp.*, 2 C.B.D.2d 501, 5 B.R. 253 (Bkrtcy.W.D.N.Y. 1980).

This Court cannot countenance the proposition that an obvious and hopeless hardship in the most basic of living conditions suffered by a debtor and his wife must be obviated and discounted on the strength of a possibility of future employment, in light of the demonstrated fact that the "education" received has been of no real benefit. Certainly, the purpose of federally guaranteed educational loans is more for the enhancement of the economic and societal stature of the student than the perpetuation of an aggressive educational institution. At the very least, Plaintiff has by clear and convincing evidence proven undue and hopeless hardship which is in no way rebutted by judicial notice that the student loan program, so ideal in concept, has been abused by many improvident students (not to mention improvident educational institutions). The purpose of the Congress in enacting the special provisions on dischargeability of student loans was to avoid bad faith of students; and not to grant educational institutions unimpeachable preference over other creditors. Equitable considerations mandate the discharge of the Debtor's student loan in accord with the underlying policy determinations manifested by the spirit and intent of the Bankruptcy Code, and the traditional fresh start for a desperate debtor for whom the avowed education provides no benefit or relief on the evidence. A court must look not only to the hopeless hardship of the debtor, but also to "the Debtor's dependents," (such as his wife).

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Debtor John Yarber's note payable to ITT Educational Services, Inc. is hereby deemed dischargeable under 11 U.S.C. § 523(a)(8).