**In re Diane Hirschberg NORMAN, Debtor.**

**FINANCIAL COLLECTION AGENCIES, Plaintiff,**

v.

**Diane Hirschberg NORMAN, Defendant.**

**Bankruptcy No. 82–00027–M7.**
**Complaint No. C82–0655–M.**

United States Bankruptcy Court, S.D. California.

Dec. 14, 1982.

Wm. Gregory Polster, La Jolla, Cal., for plaintiff.

David L. Buchbinder, San Diego, Cal., for defendant/debtor.

## MEMORANDUM OPINION ON DECISION DECLARING STUDENT LOAN OBLIGATION DISCHARGED

JAMES W. MEYERS, Bankruptcy Judge.

### I

On January 6, 1982, the debtor, Diane H. Norman, filed for protection under Chapter 7 of the United States Bankruptcy Code ("Code"). She received her discharge on April 12, 1982.

On April 14, 1982, the plaintiff filed this complaint to determine the dischargeability of an obligation that the debtor incurred for an educational loan.[1] The debtor filed her answer on May 28, 1982. On October 25, 1982, the parties filed a written stipulation agreeing that the debtor owed $5,767.50 to the plaintiff, that the obligation was an educational loan owed to a nonprofit institution of higher learning and that it first became due within five years before the date of filing of the debtor's bankruptcy petition. The parties reserved for trial the sole issue of whether excepting this debt from the discharge would impose an undue hardship on the debtor.

This case came on for trial on October 26, 1982. This opinion is filed to explain this Court's decision, concluding that this debt should not be excepted from the effect of the discharge.

### II

### FACTS

The evidence fully reveals the debtor's poignant story. She suffers from congenital nerve damage resulting in a 95% hearing loss in her right ear and loss of the high frequency range in her left ear. This severe hearing loss has required the debtor to participate in intensive speech therapy throughout her life. She was able to overcome her disability and earn a bachelor of arts degree from Wright State University, majoring in social work.

Unable to obtain employment in her chosen field of vocational rehabilitation, she was advised to get a master's degree. To this end she attended San Diego State University from 1976 to 1978, but was unable to complete this course of study, as she exhausted her funding.

Since leaving San Diego State, the debtor has attempted to find employment as a social worker, but to no avail. She has held a number of temporary and part-time jobs, such as process server for an attorneys service, census taker, retail store clerk, records clerk and real estate agent. These positions have not lasted for long, as the debtor has great difficulty in dealing with people. This problem stems from her hearing disability with its resulting speech difficulty, and her psychiatric problems, as she is currently under treatment for a manic depressive condition with a paranoid reaction.

---

1. The bar date for filing complaints to object to the granting of the discharge or to determine the dischargeability of certain debts was established as April 4, 1982, pursuant to Bankruptcy Rule 409(a)(2). However, this has no effect on the instant complaint, as educational loan lenders are not required to file a complaint to test the dischargeability of a student loan. S.Rep. No. 95–989, 95th Cong. 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. See 11 U.S.C. § 523(c); In re Mendoza, 16 B.R. 990, 992 (Bkrtcy.S.Cal.1982).

During the last four years, the debtor has averaged only $2,650 in gross income *each year!* She is currently living on $38 per week unemployment benefits, with little likelihood of obtaining any employment or generating any real estate commissions. The debtor is no longer actively seeking permanent employment, as her psychiatrist has advised her not to go back to work. Instead, she is currently seeking disability benefits from the Social Security system.

The debtor currently shares her rented house with others in order to cover the $350 per month rental expense. She has limited her food costs by participating in the food stamp program and limits her driving to that which is absolutely necessary. In addition, the debtor must spend $21 per month on batteries for her hearing aids. She does own her own automobile, a 1974 Volkswagen in poor condition, but cannot afford to purchase any insurance for it. It does not appear that the debtor has any surplus above the cost of her necessary living expenses, nor does it appear that she will be generating any surplus in the foreseeable future.

## III

## DISCUSSION

The issues presented in this complaint are governed by Section 523(a)(8) of the Code. This section provides that:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an un-

due hardship on the debtor and the debtor's dependents . . . .

11 U.S.C. § 523(a)(8) (West 1979).

Here, the parties have stipulated that the debt involved is owed to a nonprofit institution of higher education and that it first became due less than five years before the debtor filed her Chapter 7 petition. They have left for judicial determination the question of whether this debt should be discharged on the ground that repayment would place an undue hardship on the debtor under Section 523(a)(8)(B).

### A. *Allocation of Burden of Proof*

█ The basic legislative policy of the Code is to offer the honest, but unfortunate, debtor a fresh start in life free from oppressive debt. *In re Clay,* 12 B.R. 251, 255 (Bkrtcy.N.Iowa 1981); *In re Mendoza, supra,* 16 B.R. at 993. To forward this policy, the courts have determined that the debtor's discharge should be considered a *prima facie* defense to a claim that a debt should not be discharged, with the burden being placed on the creditor to show that the obligation should be excepted from the discharge. *In re Hamilton,* 21 B.R. 487, 489 n. 1 (Bkrtcy.W.D.Va.1982); *Matter of Slutzky,* 22 B.R. 270, 271 (Bkrtcy.E.Mich.1982). In this, exceptions to dischargeability must be narrowly construed against the creditor's objections, being confined to those plainly expressed in the Code. *See In re Stewart,* 10 B.R. 214, 216 (Bkrtcy.C.Cal.1981); *Matter of Newmark,* 20 B.R. 842, 853 (Bkrtcy.E.N.Y.1982); *Matter of Thomas,* 21 B.R. 553, 556 (Bkrtcy.E.Wis.1982).

Reference to Section 523 reveals that it has no provision allocating the burden of proof. *Matter of Newmark, supra,* 20 B.R. at 853. In the only case that has even mused over the question, the court concluded that the creditor has the burden to show that the student loan became due within five years before the date of the petition being filed, but reserved the question as to who should have the burden on the hardship issue. *See In re Wright,* 7 B.R. 197, 200, 7 B.C.D. 114, 116 (Bkrtcy.N.Ala.1980).

That leaves us with the task of determining what would be the proper basis for such an allocation. We are aware that there are no hard-and-fast standards governing the allocation of the burden of proof in every situation. *See Keyes v. School District No. 1, Denver, Colo.,* 413 U.S. 189, 209, 93 S.Ct. 2686, 2697, 37 L.Ed.2d 548 (1973). Rather, the issue is merely a question of policy based on experience. *Old Ben Coal Corp. v. Interior Bd. of Mine Op. App.,* 523 F.2d 25, 36 (7th Cir.1975).

Under the Bankruptcy Act, the predecessor of the Code, the practice was to look to Bankruptcy Rule 407 for guidance concerning the allocation of the burden of proof in dischargeability cases, even though that rule is specifically limited to complaints objecting to the discharge itself. *See Matter of Amador,* 596 F.2d 428, 432 (10th Cir. 1979); *Melichar v. Ost,* 7 B.R. 951, 963 (D.C.D.Md.1980). This practice has continued under the Code. *See In re Stewart,* 19 B.R. 165, 170 (Bkrtcy.E.Tenn.1982). Rule 407 provides that "[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection."[2] *See In re Armijo,* 13 B.R. 175, 177 (Bkrtcy.N.M.1981).

■ Reference to Rule 407 is of limited use in this context since the creditor and the debtor are each as likely to appear as the plaintiff. Even if we assume that Rule 407 anticipated that the creditor would be cast in the plaintiff's role, it is of little help. Clearly, the creditor must establish the existence of the debt, that it is owed to or insured or guaranteed by a governmental agency or a nonprofit institution of higher education, and that it first became due less than five years prior to the date the bankruptcy petition was filed. *See In re Wright, supra,* 7 B.R. at 200, 7 B.C.D. at 116. The question is whether it is essential to the creditor's case that it disprove the existence of a hardship on the debtor. To answer this we should be guided by the usual rules of the law of evidence, that:

(1) the burden of proof generally lies on the party asserting the affirmative of a proposition, [citation] or the party seeking to change the present state of affairs [citation];

(2) where a party is in a position to have peculiar knowledge of the facts with regard to an issue, the burden of proof as to that issue lies upon that party [citation]; and

(3) the burden of going forward with the evidence on an issue generally rests upon the party having the burden of proof on that issue.

*Williams v. Administrator of the Nat. Aero. & Space Admin.,* 463 F.2d 1391, 1400 (C.C.P. A.1972).

■ Then, the question is who has the affirmative position on a claim of "undue hardship." Several courts have declared that such a claim is in the nature of an affirmative defense. *See Matter of Thomas,* 4 B.C.D. 796 (W.N.Y.1978); *Matter of Kohn,* 5 B.C.D. 419, 420 (S.N.Y.1979). *But see Matter of McLemore,* 6 B.C.D. 973, 974 (Bkrtcy.N.Ga.1980). If it is properly treated as an affirmative defense, then the burden of proof is to be placed on the debtor as the one asserting it. *See Ocean Accident & Guaranty Corporation v. Rubin,* 73 F.2d 157, 166 (9th Cir.1934); *Organizations United for Ecology v. Bell,* 446 F.Supp. 535, 546 (M.Pa.1978); *In re Wolff,* 22 B.R. 510, 512, 9 B.C.D. 451, 452 (9th Cir.B.A.P.1982) ("burden of proof on the party who asserts the affirmative of an issue"). It appears to this Court that the claim of hardship is an affirmative defense and should be treated as such.

Placing the burden of proof on the debtor to show the necessary hardship under Section 523(a)(8)(B) is not contrary to the requirement that the creditor must prove its entitlement to be excepted from the discharge. *See Matter of Slutsky, supra,* 22 B.R. at 271. For as Justice Holmes so succinctly put it in another context:

---

**2.** This provision is an adaptation of Cal.Evid. Code § 500, which reads "... a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."

By the very form of the law the debtor is discharged subject to an exception, and one who would bring himself within the exception must offer evidence to do so. [Citation]. But there is an *exception to the exception,* . . . and, by the same principle if the debtor would get the benefit of that he must offer evidence to show his right (emphasis added).

*Hill v. Smith,* 260 U.S. 592, 595, 43 S.Ct. 219, 220, 67 L.Ed. 419 (1923). Here, it is the debtor who benefits from the "exception to an exception" and therefore should prove her entitlement to it. *See Marcum v. United States,* 452 F.2d 36, 39 (5th Cir.1971).

The debtor should also be allocated the burden since she is presumably the party who has peculiar access to her own personal affairs, as that information forms the basis for determining if repayment would be a hardship. *See G.E.J. Corporation v. Uranium Aire, Inc.,* 311 F.2d 749, 751 (9th Cir. 1962); *Trans-American Van Service Inc. v. United States,* 421 F.Supp. 308, 331 (N.Tex. 1976).[3]

█ Given that the burden of proof is on the debtor to show hardship, then naturally the burden of going forward should also be placed on the debtor.

**B. *Undue Hardship***

In examining the instant case, we note that each undue hardship case ultimately comes to rest on its own facts. *In re Brown,* 18 B.R. 219, 222 (Bkrtcy.Kan.1982); *In re Fischer,* 23 B.R. 432, 433 (Bkrtcy.W. Ky.1982). But, in reviewing the facts, this Court is aware of the unique status of debtors who would discharge their student loans. As recently expressed by Judge Deitz:

[o]f all the many suppliants for financial relief who come before this and other bankruptcy courts, few, as a class, inspire

less sympathy than the well-educated beneficiaries of student loans seeking to avoid those debts on the ground of undue hardship.

*In re Fischer, supra,* 23 B.R. at 433.

This stringent sentiment is reflected in various decisions holding that mere hardship is not enough. Instead, "undue hardship" calls for a showing of unique and extraordinary circumstances, and certainly more than just a showing of *present* inability to pay. *In re Briscoe,* 16 B.R. 128, 130 (Bkrtcy.S.N.Y.1981); *Matter of Rappaport,* 16 B.R. 615, 617 (Bkrtcy.N.J.1981); *In re Brown, supra,* 18 B.R. at 222.

The only Court of Appeals decision dealing with the undue hardship provision of Section 523(a)(8), directs that the trial courts should examine the debtor's necessary living expenses to determine if there would be a sufficient estimated future income to both pay on the student loan and maintain a minimal standard of living for the debtor and his dependents. *In re Andrews,* 661 F.2d 702, 703–04 (8th Cir.1981).[4] *Accord, In re Wegfehrt,* 10 B.R. 826, 830 (Bkrtcy.N.Ohio 1981). Stated differently, the courts recognize that:

Congress meant the extinguishment of student loans to be an available remedy to those severely disadvantaged economically as a result of unique factors which are so much a part of the bankrupt's life, present and in the foreseeable future, that the expectation of repayment is virtually non-existent unless by the effort the bankrupt strips himself of all that makes life worth living.

*Matter of Kohn, supra,* 5 B.C.D. at 424. *Accord, In re Briscoe, supra,* 16 B.R. at 131.

Ms. Norman suffers from severe disabilities, both physical and emotional. While she is well educated, she has not been able

---

**3.** It should be noted that in the field of civil procedure the burden of proof is likewise placed on the party who would claim a hardship. *See Stonybrook Tenants Association, Inc. v. Alpert,* 29 F.R.D. 165, 167 (Conn.1961).

**4.** Of course, this Court is not bound by decisions of Courts of Appeals in foreign circuits,

but such decisions are entitled to careful consideration and are not lightly ignored. *United States v. City of Philadelphia,* 482 F.Supp. 1248, 1256 n. 7 (E.Pa.1979). *See also Gunther v. County of Washington,* 623 F.2d 1303, 1319 (9th Cir.1980).

to hold a job for some time and has been advised to withdraw from the job market. She has supported herself at the most minimal level. Recently, she has relied on unemployment benefits and food stamps. It appears that she will not be holding productive employment in the future, but instead, will be supported as a ward of the state.

It is proper to consider the physical condition of the debtor in the hardship analysis. *See In re Andrews, supra,* 661 F.2d at 704–05 (Hodgkin's Disease); *In re Barrington,* 7 B.R. 267, 268 (Bkrtcy.W.N.Y.1980) (depressive illness); *Yarber v. Dept. of Health, Ed. and Welfare,* 19 B.R. 18, 19–20, 8 B.C.D. 1225, 1226 (Bkrtcy.S.Ohio 1982) ("chronic medical problems"). A debtor's sporadic employment history and her prospects for the future, must also be weighed. *See Matter of Siebert,* 10 B.R. 704 (Bkrtcy.S.Ohio 1981); *In re Birden,* 17 B.R. 891 (Bkrtcy.E. Pa.1982) (attorney-at-law). It appears from the record that the debtor is suffering under a total incapacity, now and in the foreseeable future, which will preclude her from obtaining the level of employment necessary for her to repay her student loans. The reasons for those disabilities do not appear to have been within her control. *See Matter of Rappaport, supra,* 16 B.R. at 617. She has not accumulated any wealth, has no real prospect for meaningful employment, it is doubtful whether she will have sufficient resources to provide even a generally accepted standard of living and surely there will not be any surplus over her living expenses to commit to a repayment scheme. *See In re Bagley,* 4 B.R. 248, 250–51, 6 B.C.D. 404, 405–06 (Bkrtcy.Ariz.1980); *Matter of Hemmen,* 7 B.R. 63, 65 (Bkrtcy.N. Ala.1980).

The debtor has clearly carried her burden of proof and amply demonstrated that continued repayment of her student loans would constitute an undue hardship and, therefore, this obligation must be discharged. *See Matter of Diaz,* 5 B.R. 253 (Bkrtcy.W.N.Y.1980) (psychiatric problems); *In re Nichols,* 15 B.R. 208 (Bkrtcy.Maine 1981) (alcoholic and psychiatric problems); *In re La Chance,* 17 B.R. 1023 (Bkrtcy. Maine 1982) (physical and emotional problems).[5]

## IV

## CONCLUSION

The plaintiff has satisfied its burden of showing that the debtor owes them a debt for a student loan to a nonprofit institution of higher learning, which first became due within five years prior to the filing of the petition in this case, and as such should be considered excepted from the discharge. However, the debtor, in turn, has sustained her burden in proving, by a clear preponderance of the evidence, that repayment of this obligation would constitute an undue hardship on her and should therefore, in the final analysis, be included within the effect of the discharge entered on April 12, 1982.

This opinion will constitute findings of fact and conclusions of law as required by Bankruptcy Rule 752.

5. The plaintiff would argue that the debtor did not act in good faith by failing to contact them and arranging a temporary moratorium on repayment. But, a debtor need not negotiate with her creditors in order to be acting in good faith. Instead, all she must do is demonstrate a willingness to obtain employment and minimize expenses in order to satisfy the so-called "good faith" test. *See* Note, *In re Andrews: "Undue Hardship" and the Discharge of Student Loans,* 15 Creighton L.Rev. 819, 825 (1982).