In re Edna R. CONNOLLY, Debtor.

Edna R. CONNOLLY, Plaintiff,

v.

The FLORIDA BOARD OF REGENTS, for and on behalf of the University of North Florida, Florida Federal Savings & Loan Association and The Florida Student Financial Assistance Commission, Defendants.

Bankruptcy No. 82–523–BK–J–GP.
Adv. No. 82–482.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 31, 1983.

---

5. *See* GWIP's brief at 5.

Douglas P. McClurg, Jacksonville, Fla., for plaintiff.

Gene Sellers, Tallahassee, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This action was tried before the Court on May 4, 1983. Based upon the evidence presented and arguments of counsel, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On July 20, 1982, Edna R. Connolly ("Connolly") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "Code"). This Court subsequently entered an order discharging Connolly from all dischargeable debts.

2. On October 18, 1982, Connolly, pursuant to Section 523(a)(8) of the Code, filed suit against defendants, the Florida Board of Regents, for and on behalf of the University of North Florida ("UNF"), the Florida Student Financial Assistance Commission and Florida Federal Savings & Loan Association seeking discharge of governmentally guaranteed student loans in the total amount of $7,171.56, plus interest.

3. Connolly is 57 years old, divorced and lives alone. She is currently unemployed and last held a permanent job in 1979. Connolly was terminated from that job because of frequent tardiness and an inability to accomplish the assigned daily tasks.

4. Connolly was married in 1958 and had three children in her marriage. Following the birth of her first child in 1959, Connolly did not actively pursue a career, but instead spent the majority of her time as a homemaker. Connolly occasionally helped her husband in his various business ventures as a jeweler and a watchmaker.

5. In the late 1960's Connolly encountered severe marital problems and eventually was divorced in 1972, at which time she was forced to become self-supporting.

6. Beginning with her first job as an adult in 1947 and continuing on and off until her marriage, Connolly held numerous jobs in the secretarial and clerical field.

7. After her divorce and until 1977 Connolly held various jobs of a similar nature, none of which lasted more than a year. Connolly's inability to maintain constant employment during this time period was a result of various physical and emotional problems.

8. Since the early 1960's Connolly has suffered from numerous physical disorders. During the last 23 years she has endured a number of surgeries and has suffered from such debilitating physical problems as severe abdominal pain, a prolapsed uterus, arthritis, hemorrhoids, edema, recurring cystoceles, high blood pressure and poor circulation. During the last 3 years (1980–83)

Connolly has seen over 30 physicians seeking treatment for her various ailments.

9. Presently, Connolly is suffering from many of the physical ailments mentioned above and is seeing 4 physicians on a regular basis who prescribe various medications and treatments.

10. Aside from the series of physical illnesses, Connolly has encountered severe emotional or psychiatric problems for which she has been treated and evaluated by psychiatrists and other mental health professionals since the early 1970's. During 1972 Connolly was hospitalized several weeks for her emotional problems and at that time she received shock treatments.

11. Currently, Connolly is receiving treatment for her emotional problems at the Mental Health Resource Center located in Jacksonville, Florida. The Center is a government funded clinic providing psychiatric counseling to the needy. Connolly has been a patient there for approximately 3 years and has been under the care of Toni Foiles, a psychotherapist employed by the Center.

12. Foiles testified at the trial as an expert witness based upon her qualifications, including her educational background, her training and her experience in treating Connolly's emotional problems for the past several years.

13. Foiles testified as to her conclusions concerning Connolly's emotional condition. Foiles stated that Connolly suffers from a common disorder generally known as anxiety neurosis and depression.

14. Although this condition is relatively common, the consequences of the condition will vary with each individual in severity, often impairing one's ability to function effectively in normal day to day activities.

15. Foiles testified that, because of the emotional disorder, Connolly has a low self-esteem, often experiences feelings of hopelessness and helplessness, has difficulty concentrating and has difficulty completing tasks.

16. Foiles further stated that Connolly could not obtain and maintain gainful employment. Foiles based her opinion on the observations made during her various therapy sessions with Connolly, Connolly's medical history and work history, and specific characteristics and behavior patterns of Connolly that have become apparent to Foiles during the last several years.

17. Connolly has attended various universities throughout her lifetime in an attempt to obtain a college degree which, she hoped, would enable her to obtain a better job.

18. Connolly graduated from high school in 1943 and intermittently attended Stetson University from 1943–1947. She also attended junior college from 1957–1958 and again in 1967. Connolly never obtained a degree during this time period.

19. In January, 1980, Connolly re-entered school in an attempt to complete her course work and obtain a degree. In order to attend the university, Connolly needed financial assistance and, therefore, incurred the loan debts which are the subject of this action.

20. In pursuit of her degree, Connolly has attended UNF intermittently from 1980 until the present and has encountered academic difficulties on a number of occasions. She has withdrawn from the university for various physical, emotional and economic reasons 4 different times. Connolly has also been placed on academic probation at times because of unsatisfactory progress in her course work.

21. Connolly's last withdrawal from UNF was on March 5, 1982. This was 1 day after receiving a $250 cash disbursement from the student financial aid office at UNF. Although a question was raised at trial as to the propriety of Connolly's actions in obtaining the $250 disbursement 1 day before withdrawing and then failing to return it to the university, the Court finds that no legal wrong or fraud was committed by Connolly inasmuch as she testified that she did not decide to withdraw until after receiving the money and that her decision was pragmatic in that she was not doing well in her course work.

22. In reference to Connolly's numerous attempts and failures to complete her degree, Connolly's psychotherapist (Foiles) testified that, even if Connolly eventually graduates, she did not believe the degree would aid Connolly in securing employment. Foiles also concluded that the various withdrawals from UNF and the numerous incompletes received by Connolly for her failure to complete course assignments were symptomatic of Connolly's emotional problems and inability to cope with stressful situations.

23. While the physical and emotional problems encountered by Connolly are legion, she has put forth a good faith effort in trying to obtain employment since her last permanent job in 1979. Since that time, Connolly has had approximately 60 job interviews, but she was rejected for each position.

24. Each month Connolly receives social security disability insurance benefits in the amount of $257. This is a result of Connolly having been declared disabled by an administrative law judge on May 13, 1982. There is no guarantee that these payments will continue in the future. The only other cash income received by Connolly is Supplemental Security Income in the amount of $47.30 per month.

25. The only other financial assistance received by Connolly is in the form of food stamps ($29 per month) and rent subsidy from the division of Housing and Urban Development ($173 per month). Thus, Connolly's total monthly income, in the form of cash and other benefits, is only $506.30.

26. Connolly's expenses each month are those incurred for food, utilities, rent, payments to the trustee in bankruptcy for personal belongings, clothing, insurance, auto expenses and medical expenses. The total amount of such expenses on a monthly basis exceed Connolly's income.

27. The assets listed on the schedules originally filed by Connolly, which are complete and accurate, are of minimal value.

28. Excepting Connolly's student loan debts from discharge would impose an undue hardship on Connolly and, as a practical matter, the government would be unable to collect on the debts given Connolly's current financial position.

## CONCLUSIONS OF LAW

1. Student loan debts are excepted from discharge under Section 523(a)(8) of the Code until such loans have been due and owing for five years or unless the debtor proves that excepting such loans from discharge will impose undue hardship on the debtor. 11 U.S.C. § 523(a)(8).

2. The legislative history behind the student loan exception indicates that Section 523(a)(8) was enacted in response to the increasing number of bankruptcies of former students motivated primarily by the desire to avoid repayment of student loans. As a result of the rising incidence of student bankruptcies, the student loan programs throughout the nation were jeopardized. Section 523(a)(8) was directed, therefore, at preventing young, intelligent and healthy graduates from easily obtaining a discharge of student loan debts. *In re Wegfehrt*, 10 B.R. 826 (Bkrtcy.N.D.Ohio 1981) (citing Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 137, 93rd Cong. 1st Sess., Pt. II, p. 140, n. 14 (1973)).

3. Inasmuch as "undue hardship" is not defined in the Code, when determining whether a debtor will face undue hardship if required to repay a student loan, it is proper for a court to consider each case on the facts and circumstances surrounding the particular debtor. *In re Clay*, 12 B.R. 251 (Bkrtcy.N.D.Iowa 1981). In order to make such a determination, the only sources available for discerning the proper factors and standards that should be considered are the legislative history underlying the enactment of Section 523(a)(8) and the pertinent case law. *See In re Wegfehrt*, 10 B.R. 826 (Bkrtcy.N.D.Ohio 1981).

4. The Commission on the Bankruptcy Laws of the United States recommended to Congress that in making a determination of whether an undue hardship will be imposed, the rate and amount of the debtor's future

resources should be estimated in terms of the particular debtor's ability to obtain and continue employment. All unearned income or other wealth the debtor expects to receive should also be considered. A debtor's current total income, its reliability and the periodicity of its receipt should be sufficient to support the debtor at a minimal standard of living. *In re Wegfehrt,* 10 B.R. 826 (Bkrtcy.N.D.Ohio 1981) (citing Report of the Commission on the Bankruptcy Laws of the United States, H.R. No. 137, 93rd Cong. 1st Sess., Pt. II, pp. 140–41, n. 17 (1973)).

5. In some cases determining the issue of undue hardship the courts have attempted to enunciate and utilize tests which employ several factors. These tests are: the mechanical test, which focuses on a debtor's expenses and future financial resources; the good faith test, which focuses on a debtor's efforts to obtain employment, to minimize expenditures and to maximize resources; and the policy test, which focuses on the amount of the debtor's student loan, the percentage of the loan to the total indebtedness, and the benefit derived by the debtor from the education. *See, e.g., In re Packer,* 9 B.R. 884 (Bkrtcy.D.Mass.1981); *In re Kammerud,* 15 B.R. 1 (Bkrtcy.S.D. Ohio 1980); *In re Fonzo,* 1 B.R. 722 (Bkrtcy. S.D.N.Y.1979); *In re Johnson,* 5 B.C.D. 532 (E.D.Pa.1979).

6. The majority of cases choose to ignore particular tests and instead examine various factors which, among others, include those considered in the three tests described above. Irrespective of the test applied or the factors considered, it is this Court's view that the result in the instant case will be the same. This becomes clearer after examining several of the factors which this Court considers relevant in the context of the circumstances surrounding Connolly.

7. *Current Employment Status:* Virtually all cases consider it important to examine the current employment status of the debtor. *See, e.g., In re Clay,* 12 B.R. 251 (Bkrtcy.N.D.Iowa 1981). Connolly last held a permanent job in 1979 and is currently unemployed.

8. *Future Employment Potential:* Perhaps the most important factor to examine is a debtor's ability to secure and maintain future employment. *See, e.g., In re Diaz,* 5 B.R. 253 (Bkrtcy.W.D.N.Y.1980). Numerous cases have discharged a debtor's student loan obligations based primarily on the consideration that debilitating physical and mental problems may prevent one from obtaining gainful employment. *See, e.g., In re Norman,* 25 B.R. 545 (Bkrtcy.S.D.Cal. 1982); *Yarber v. Dept. of Health, Ed. and Welfare,* 19 B.R. 18 (Bkrtcy.S.D.Ohio 1982); *In re Nichols,* 15 B.R. 208 (Bkrtcy.D.Me. 1981); *In re Diaz,* 5 B.R. 253 (Bkrtcy.W.D. N.Y.1980). Connolly suffers from an overwhelming number of diagnosed physical and emotional disorders which prevent her from obtaining future gainful employment.

9. *Current Income and Expenses:* A debtor's current financial resources as balanced against current expenses is also an important consideration. *See, e.g., In re Lezer,* 21 B.R. 783 (Bkrtcy.N.D.N.Y.1982); *See also, In re Andrews,* 661 F.2d 702 (8th Cir.1982). Connolly's expenses, while minimal, exceed her present income of $506.30 per month.

10. *Benefit Derived From Education:* Several cases have noted that student loans are often granted to those who have little aptitude or chance of succeeding in life and that students are often encouraged to pursue a curriculum which will not lead to satisfactory employment. As a result, students attain very little benefit from the education made possible by the loans. *See, e.g., In re Littell,* 6 B.R. 85 (Bkrtcy.D.Or. 1980). The likelihood of Connolly deriving a significant benefit from her education is extremely remote.

11. *Good Faith Factors:* Courts have also shown a willingness to examine a debtor's efforts to obtain employment and minimize expenses in their evaluation of "undue hardship." *See Yarber v. Dept. of Health, Ed. and Welfare,* 19 B.R. 18 (Bkrtcy.S.D. Ohio 1982); *In re Clay,* 12 B.R. 251 (Bkrtcy. N.D.Iowa 1981); *In re Conard,* 6 B.R. 151 (Bkrtcy.W.D.Ky.1980). Connolly has dem-

onstrated "good faith" in that she has applied for over 60 jobs in the past 3 years, but was rejected for each position. Unfortunately, Connolly has had no choice but to minimize her expenses.

12. Based on the foregoing it is the conclusion of this Court that Connolly is not guilty of the abuse of bankruptcy laws which Section 523(a)(8) was intended to bar. It is the further conclusion of this Court that to except the student loan debts from discharge in this case would impose an "undue hardship" on Connolly. Therefore, Connolly's student loan obligations shall be discharged.

A final judgment will be entered in favor of Edna R. Connolly and against the Florida Board of Regents, for and on behalf of the University of North Florida, Florida Federal Savings & Loan Association and the Florida Financial Assistance Commission in accordance with these Findings of Fact and Conclusions of Law.