In re Chester Roland LEZER, Sr., Debtor.

Chester Roland LEZER, Sr., Plaintiff,

v.

NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION, Defendant.

In re Stephen G. MUSAN and Jean D. Musan, Debtors.

Jean D. MUSAN, Plaintiff,

v.

NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION, Defendant.

Bankruptcy Nos. 81–00880, 80–12446. Adv. Nos. 81–8028, 81–8011.

United States Bankruptcy Court, N. D. New York.

July 8, 1982.

John G. Sisti, New Paltz, N.Y., for plaintiff Chester Roland Lezer, Sr.

Ungerman & Ackerman, P. C., Albany, N.Y., for plaintiff Jean D. Musan; Stewart Finton, Albany, N.Y., of counsel.

Frederick J. Schreyer, Albany, N.Y., of counsel, for New York State Higher Educ. Services Corp., defendant.

## DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF STUDENT LOAN DEBTS UNDER 11 U.S.C. § 523(a)(8)(B) FOR "UNDUE HARDSHIP"

JEREMIAH E. BERK, Bankruptcy Judge.

In both adversary proceedings, the Chapter 7 debtor-plaintiffs seek to discharge student loan debts, owed to defendant New York State Higher Education Services Corporation (NYSHESC), pursuant to § 523(a)(8)(B) of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq.*, (hereinafter Bankruptcy Code or Code). Each pro-

ceeding presents the question whether repayment of the student loan would cause the debtor and dependents to suffer an undue hardship. Pursuant to pre-trial order, a stipulation was filed stating the agreed facts and limiting the issues. The only testimony adduced during trial was that of each debtor-plaintiff who testified on his or her own case. The defendant offered no testimony. Upon the pleadings, pre-trial stipulations, memoranda and testimony adduced at trial, it is found that excepting the debt of Mr. Lezer from discharge would not impose an undue hardship on him and his dependents, and that excepting the debt of Mrs. Musan from discharge would impose an undue hardship on her and her dependents.

## FINDINGS OF FACT RE: CHESTER ROLAND LEZER, SR.

1. Between 1974 and 1975, plaintiff, Chester Roland Lezer, Sr., borrowed $2,500 as a student loan in order to attend Ulster County Community College. The loan was guaranteed by defendant. Plaintiff did not commence repayment of the loan upon its maturity and was granted a payment deferment. He filed a Chapter 7 petition in bankruptcy on June 15, 1981 after making 35 monthly payments. Defendant has purchased the loan for $1,432.02.

2. Residence. Plaintiff and his wife lease an apartment for $280 per month in New Paltz, New York.

3. Education. Plaintiff attended Ulster County Community College from 1973 to 1975, receiving an Associate of Applied Sciences degree with a concentration in accounting upon graduation. He next attended the State University of New York at Utica-Rome, but withdrew from classes during the first semester for financial reasons.

4. Marital Status and Dependents. Plaintiff married his present wife on July 4, 1981. She is currently unemployed and supported by plaintiff, though plaintiff expects she will return to work by October, 1982. She receives an insurance annuity in an undisclosed amount which she uses for her own purposes. Plaintiff offered no explanation of the annuity and does not know how this income is spent. Plaintiff pays $10 per week for support of his seven-year-old son pursuant to a support agreement. He has been paying this amount since his divorce. He pays no support or maintenance to his former wife.

5. Health. Plaintiff's health is generally good. He is presently undergoing minor surgery which does not affect his employment and for which he is largely insured.

6. Assets. Plaintiff purchased a 1979 automobile and transferred the ownership to his wife on May 6, 1981. The automobile remains subject to a security agreement requiring monthly payments of $117. Plaintiff continued those payments throughout his bankruptcy case as he needed the car to attend work. His wife owns a 1980 automobile as well.

7. Employment, Income and Expenses. After graduation, plaintiff sought employment but could not secure a position for which his education had prepared him. Over the course of five years, he worked first as a hotel security guard and later as an assistant security chief at a hotel at a wage of $4.07 an hour; his college education proved to be useful in the latter position. Plaintiff left this work for a temporary job as a tax return preparer where he earned a total of $900 over a period of several months ending on April 15, 1981. He intends to work again at this job in 1982. Plaintiff also earns approximately $550 yearly preparing tax returns for 20 to 25 private clients and is attempting to expand this business; it is the type of work which enables him to make use of his education in accounting. From April to September, 1981, plaintiff received unemployment insurance compensation but returned to work on September 14, 1981 as an Ulster County social welfare examiner where he currently earns $316 every two weeks. His college education is useful for his social welfare examiner duties. Plaintiff's approximate monthly expenses are:

| | |
|---|---|
| Rent | $280.00 |
| Gasoline | $ 40.00 |
| Car Insurance | $ 34.00 |
| Car Repair | $ 15.00 |
| Car Payments | $117.00 |
| Food | $100.00 |
| Clothing | $ 25.00 |
| Child Support | $ 40.00 |
| Insurance | $ 7.25 |
| Union Dues | $ 8.67 |
| Electricity | $ 20.00 |
| Telephone | $ 40.00 |
| Recreation | $ 25.00 |
| Cable Television | $ 17.00 |
| Student Loan Payment | $ 44.09 |
| TOTAL | $813.01 |

Plaintiff's approximate annual net income, from his work as a social welfare examiner and tax return preparer, is $9,666.

8. Loan History. Plaintiff has made a total of 35 student loan payments. Although he has always experienced difficulty in making these payments, his wife's present unemployment has increased the burden.

The essence of plaintiff's undue hardship claim is that repayment of the loan will prevent him from voluntarily increasing the support payments to his son now that his present wife is unemployed. Plaintiff is here attempting to discharge monthly loan payments of $44.09.

## FINDINGS OF FACT RE: JEAN D. MUSAN

1. Between July, 1978 and July, 1979, plaintiff, Jean D. Musan, borrowed $4,092 as a student loan in order to attend Columbia Memorial Hospital School of Nursing. This loan was likewise guaranteed by defendant. In October, 1979, plaintiff withdrew from school and in August, 1980, made one loan payment of $47.50, defaulting on all other payments. She and her husband filed a joint Chapter 7 petition in bankruptcy on November 5, 1980. The debtors have subsequently been divorced. Defendant has purchased the loan for $4,350.40.

2. Residence. Plaintiff pays a monthly rental of $185 for a two-bedroom apartment in Catskill, New York, which she occupies with her infant son and daughter.

3. Education. Plaintiff is a high school graduate who would have become a registered nurse had she completed her course of study at Columbia Memorial Hospital School of Nursing.

4. Marital Status and Dependents. Plaintiff is divorced and has custody of her two children, aged four and seven, one of whom has a serious medical condition.

5. Health. Plaintiff is in good health. She has incurred post-petition medical expenses of $220 for her son. Her former husband's medical insurance policy pays two-thirds of the childrens' medical expenses; the remainder is divided equally between them pursuant to their separation agreement.

6. Assets. At the time of trial, plaintiff had $59 on deposit at her bank and no assets of any substantial value.

7. Employment, Income and Expenses. Plaintiff has been employed for the past four years as a cashier at a department store in a nearby community. She now earns an hourly wage of $3.60 and expects a raise in January, 1983. Mr. Musan provides weekly child support of $65 pursuant to a court order which made no provision for plaintiff's personal support or maintenance. Plaintiff owns no life insurance; her employer provides a pension plan.

Plaintiff has sought a higher paying job but her education is limited and she cannot afford to return to school. She is inclined to remain with her present employer where, after four years, she has attained a level of seniority too valuable in her opinion to be wasted. Plaintiff, moreover, owns no automobile so her job prospects are essentially limited to the local neighborhood.

Plaintiff's approximate monthly expenses are:

| | |
|---|---|
| Rent | $185.00 |
| Food and Misc. | $280.00 |
| Clothing | $ 75.00 |
| Insurance | $ 4.00 |
| Electricity | $ 20.00 |
| Telephone | $ 25.00 |

| | |
|---|---|
| Cable Television | $ 7.95 |
| Babysitting | $120.00 |
| Student Loan Payment | $ 47.50 |
| TOTAL | $764.45 |

Plaintiff's approximate annual net income, from her work as a department store cashier and including weekly child support paid by her former husband, is $8,944.

Plaintiff's monthly expenses exceed her income. She is unable to pay her bills promptly and has reduced necessary food and clothing purchases when she is required to make a payment. Plaintiff is here attempting to discharge monthly loan payments of $47.50.

## DISCUSSION

The pertinent part of Bankruptcy Code § 523(a)(8)(B), as amended, provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents . . .

A plaintiff must show that repayment of the student loan would impose an undue hardship on oneself and on one's dependents. However, "undue hardship" is not defined in the Bankruptcy Code.[1] Courts have therefore sought guidance from the legislative history of § 523(a)(8)(B) and its antecedents in an attempt to determine the meaning of the term.[2]

One provision of this history recites:

[i]n order to determine whether nondischargeability of the debt will impose an "undue hardship" on the debtor, the rate and amount of his future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected. Any unearned income or other wealth which the debtor can be expected to receive should also be taken into account. The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and his dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt.[3]

The legislative history thus suggests that a finding that repayment of a debt would cause a debtor undue hardship must be considered an exception to the rule.[4] With this general proposition in mind, Bankruptcy Courts have determined that "undue hardship" must mean more than an unpleasantness associated with the repayment of a just debt. See In re Rappaport, 16 B.R. 615 (Bkrtcy.D.N.J.1981); United States v. Collier, 8 B.R. 909, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,895 (Bkrtcy.S.D. Ohio 1981).

Tests have been devised to determine positively whether the debtor would suffer undue hardship with the exception from discharge of a debt arising from a student loan. Generally, there must be a

1. See In re Hemmen, 7 B.R. 63, 3 C.B.C.2d 140 (Bkrtcy.N.D.Ala.1980).

2. See, e.g., In re Rappaport, 16 B.R. 615 (Bkrtcy.D.N.J.1981) (citing Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No.137, Pt. II, 93d Cong., 1st Sess. 140 n.14 (1973), and H.R.Rep.No.95–595, 95th Cong., 1st Sess. 133 (1977)), U.S.Code Cong. & Admin.News 1978, p. 5787, and In re Kohn, 5 B.C.D. 419 (Bkrtcy.S.D.N.Y.1979) (citing Hearings Before the Subcommittee on Improvement in Judicial Machinery of the Committee on the Judiciary of the United States Senate on S. 235 and S. 236, 94th Cong., 1st Sess. 27–28 (1975) and Hearings Before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary on H.R. 31 and H.R. 32, 94th Cong., 1st Sess. 1092–93 (1976)).

3. Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc.No.93–137, Part II, 93d Cong., 1st Sess. 140–41 (1973) (commenting upon proposed § 4–506(B)).

4. See In re Kohn, 5 BCD 419, 424 (Bkrtcy.S.D. N.Y.1979).

showing of exceptional or unique circumstances, such as that the debtor must bear the burden of heavy medical expenses while living at a poverty level, or has become physically incapable of earning an income, or must care for dependent parents at a cost of extreme but good faith self-deprivation to the debtor.[5] Each undue hardship discharge must rest on its own facts, *In re Conard*, 6 B.R. 151, 3 C.B.C.2d 54 (Bkrtcy. W.D.Ky.1980); but the dischargeability of student loans should be based upon "the certainty of hopelessness," *In re Briscoe*, 16 B.R. 128, 3 Bankr.L.Rep. (CCH) ¶ 68,483 (Bkrtcy.S.D.N.Y.1981).[6]

Courts have considered a variety of factors in analyzing whether repayment of a debt would cause undue hardship. Some of these factors are the future earning potential of the debtor, *see In re Rappaport*, 16 B.R. 615 (Bkrtcy.D.N.J.1981); the excess of the debtor's expenses over income, *see In re Rice*, 13 B.R. 614, 8 B.C.D. 55, 4 C.B.C.2d 1343 (Bkrtcy.D.S.D.1981); the existence of any medical expenses or problems, *see In re Diaz*, 5 B.R. 253, 2 C.B.C.2d 501 (Bkrtcy.W. D.N.Y.1980); the debtor's reasonable living expenses, *see In re Andrews*, 661 F.2d 702 (8th Cir. 1981); the debtor's good faith, *see In re Clay*, 12 B.R. 251 (Bkrtcy.N.D.Iowa 1981); the effect of the debtor's course work on his future earning capacity, *see In re Fonzo*, 1 B.R. 722, 5 B.C.D. 1174 (Bkrtcy. S.D.N.Y.1979); the debtor's negotiations with the creditor prior to filing bankruptcy, *see In re Rice, supra*; the degree to which

the debtor's hardship was self-imposed, *see Perkins v. Vermont Student Assistance Corp.*, 11 B.R. 160, 4 C.B.C.2d 249 (Bkrtcy.D. Vt.1980); the ability of the debtor to gain employment in the field for which he was trained, *see In re Bell*, 5 B.R. 461, 2 C.B. C.2d 977 (Bkrtcy.N.D.Ga.1980); and reaffirmation agreements with other creditors, *see In re Ewell*, 1 B.R. 311, 5 B.C.D. 1041 (Bkrtcy.D.Vt.1979).

A workable and comprehensive three-tiered method of factual analysis was developed by the Court in *In re Johnson*, 5 B.C.D. 532 (Bkrtcy.E.D.Pa.1979). It is sensitive to both the many causes of undue hardship and to the underlying legislative intent of Bankruptcy Code § 523(a)(8)(B), and will be employed by this Court in its determination of whether debtors Lezer and Musan would suffer undue hardship if their student loan debts were not to be discharged. The *Johnson* Court proposed the application of the following three tests:

(1) Mechanical Test: The court must ask: Will the debtor's future financial resources for the longest forseeable period of time allowed for repayment of the loan, be sufficient to support the debtor and his dependent at a subsistence or poverty standard of living, as well as to fund repayment of the student loan? If this question is answered affirmatively, discharge of the student loan must be denied. If answered negatively, then the court must apply the good faith test:

(2) Good Faith Test: Here, the court asks two questions:

---

**5.** *See, e.g., In re Diaz*, 5 B.R. 253, 2 C.B.C.2d 501 (Bkrtcy.W.D.N.Y.1980) ("[A] classic hardship case" in which the debtor's monthly expenses exceeded her income and both the debtor and her dependents required extensive medical care); *In re Bagley*, 4 B.R. 248, 6 B.C.D. 404, 2 C.B.C.2d 251 (Bkrtcy.D.Ariz.1980) (The debtor and her husband incurred substantial post-petition medical bills and were "living at a near welfare level."); *In re Siebert*, 10 B.R. 704 (Bkrtcy.S.D.Ohio 1981) (An unskilled, unemployed, poorly educated debtor had little potential for future gainful work and the court found "classic hardship."); *In re Clay*, 12 B.R. 251 (Bkrtcy.N.D.Iowa 1981) (The totality of circumstances surrounding a good-faith debtor with dependent parents demonstrated undue hardship). *But see In re MacPherson*, 4 B.C.D. 950, 19 C.B.C. 178 (Bkrtcy.W.D.Wis.1978) (While

repayment of the total debt on the original schedule would be an undue hardship, the court concluded that repayment of the principal sum on a different schedule would not create undue hardship.)

**6.** *See also In re Johnson*, 5 B.C.D. 532 (Bkrtcy. E.D.Pa.1979) (undue hardship is judged by the application of a three-tiered test); *In re Clay*, 12 B.R. 251 (Bkrtcy.N.D.Iowa 1981) (the "totality of circumstances" may indicate undue hardship); *In re Densmore*, 8 B.R. 308, 309, 7 B.C.D. 271, 272, 3 C.B.C.2d 471, 472 (Bkrtcy.N.D.Ga. 1979); *In re White*, 6 B.R. 26, 29, 22 C.B.C. 989, 992 [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,535 (Bkrtcy.S.D.N.Y.1980); and *In re Tobin*, 18 B.R. 560 (Bkrtcy.W.D.Wis.1982).

(a) Was the debtor negligent or irresponsible in his efforts to minimize expenses, maximize resources, or secure employment?

(b) If "yes," then would lack of such negligence or irresponsibility have altered the answer to the mechanical test?

If the answer to the first part of the good faith test is no, then the debtor should be discharged of the obligation to repay his student loan. However, if the answers to both parts of the good faith test are "yes," then a presumption against discharge is established—which may be rebutted by a negative answer to the third and final test.

(3) ... Policy Test: The court must ask: Do the circumstances—*i.e.*, the amount and percentage of total indebtedness of the student loan and the employment prospects of the petitioner indicate:

(a) That the dominant purpose of the bankruptcy petition was to discharge the student debt, or

(b) That the debtor has definitely benefited financially from the education which the loan helped to finance?

If the answer to both parts of this question is a firm "no," then the debtor should be discharged from his student loan obligation. If the court answers "yes" to either part of the question, then discharge should be denied.

*Id.* at 544.

## I. CHESTER ROLAND LEZER, SR.

■ A. Mechanical Test. At trial plaintiff demonstrated that his monthly expenses of $813 exceeded his monthly income of $805. However, his long-term future financial resources appear sufficient to support him and his wife at a subsistence or poverty standard of living over the period of time required for repayment of the loan. Plaintiff's salary has steadily increased since his graduation. He was able to make the loan payments even while unemployed. He works part-time at a second job. He has his own small business. His education has been of help to him in his various jobs. His wife is expected to return to work by October and the primary reason for his current inability to make loan payments will then disappear. Undue hardship is not based upon a present inability to pay but instead on a "certainty of hopelessness" that future payments cannot be made. *In re Briscoe*, 16 B.R. 128, 131, 3 Bankr.L.Rep. (CCH) ¶ 68,483 at 80,157 (Bkrtcy.S.D.N.Y. 1981); *see also In re Abrams*, 19 B.R. 64 (Bkrtcy.D.Neb.1982). From the above facts it appears plaintiff's financial condition will improve sufficiently to allow repayment of the student loan and to allow plaintiff and his wife to subsist at least at a poverty standard of living. Plaintiff does not satisfy the mechanical test and his student loan debt to NYSHESC is thus nondischargeable.

## II. JEAN D. MUSAN

■ A. Mechanical Test. Plaintiff demonstrated that her expenses exceeded her income. She and her children, one of whom has been diagnosed as having a serious medical condition, are currently living at a subsistence level with no improvement likely in the foreseeable future. She cannot afford further job training or an automobile. If she were required to repay the student loan she and her two children would be forced to live below a poverty level. Salary increases will not offset her monthly student loan payment of $47.50. Her circumstances appear hopeless. *See, e.g., Yarber v. Dept. of Health, Education & Welfare*, 19 B.R. 18 (Bkrtcy.S.D.Ohio 1982). She passes the mechanical test.

B. The good faith test is also satisfied. She has made reasonable attempts to obtain a more lucrative position and has not been able to find a job which offers better or equivalent salary, benefits and security. She has reduced expenses as far as possible and occasionally goes without food. She appears to have maximized her resources and has been neither negligent nor irresponsible about her finances.

As the plaintiff has satisfied both the mechanical and good faith tests stated in *In re Johnson, supra*, it is unnecessary for the

Court to consider the policy test. This debt to NYSHESC is discharged.

## CONCLUSIONS OF LAW

1. In CHESTER ROLAND LEZER, SR. v. NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION, 81 ADV 8028, plaintiff has not sustained his burden of proof. The debt to defendant is not discharged. It is So Ordered.

2. In JEAN D. MUSAN v. NEW YORK STATE HIGHER EDUCATION SERVICES CORPORATION, 81 ADV 8011, plaintiff has sustained her burden of proving that excepting this debt from discharge would impose an undue hardship on her and her two children. Accordingly, this debt to defendant is discharged. It is So Ordered.