**In re Stanley HOLZER, Debtor.**

**Stanley HOLZER, Plaintiff,**

v.

**WACHOVIA SERVICES, INC. and New York State Higher Education Services Corporation, Defendants.**

Bankruptcy No. 82–30511.
Adv. No. 82–7158.

United States Bankruptcy Court,
S.D. New York.

Sept. 27, 1983.

New York State Higher Education Services Corp., Albany, N.Y., for defendant; Barbara C. North, Albany, N.Y., of counsel.

Finkelstein, Mauriello, Kaplan & Levine, Newburgh, N.Y., for plaintiff; Andrew S. Krieger, Poughkeepsie, of counsel.

## DECISION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF STUDENT LOAN DEBTS UNDER 11 U.S.C. § 523(a)(8)(B) FOR "UNDUE HARDSHIP"

JEREMIAH E. BERK, Bankruptcy Judge.

The instant adversary proceeding commenced by the debtor-plaintiff pursuant to § 523(a)(8)(B) of the Bankruptcy Reform Act of 1978 (Code), seeks to discharge student loan debts owed to defendant, New York State Higher Education Services Corporation (NYSHESC),[1] on the ground that

excepting such debts from discharge would impose an "undue hardship" on the debtor and his dependents. Upon the pleadings, pre-trial stipulations, memoranda of law and testimony adduced at trial, the Court is unable to find "undue hardship" within the meaning of § 523(a)(8)(B).

## FINDINGS OF FACT

1. Plaintiff, STANLEY HOLZER, received New York State guaranteed student loans for each of the years 1974 through 1978 totalling $14,500 in order to attend medical school at the University of Granada, Spain. He graduated medical school in December 1981 receiving a Licenciado en Medicina y Cirugia diploma. Defendant NYSHESC purchased the student loans pursuant to its guarantee on September 23, 1982 after default.

2. Loan History. Plaintiff has made no payments on these student loans. He filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.,* on August 16, 1982. It appears these loans became payable on or about that time, approximately nine months after October, 1981, when plaintiff ceased to be a full-time student. The student loans were the only debts listed in plaintiff's Chapter 7 schedule of liabilities. It is uncontroverted that plaintiff's sole purpose in taking bankruptcy was to obtain a discharge from his student loan indebtedness. At no time has he sought a repayment deferment based upon his financial difficulties.

3. Education and Employment History. Plaintiff received a Bachelor of Science degree from the Brooklyn College of Pharmacy of Long Island University in August, 1959. In August, 1961 he became a New York State licensed pharmacist and in June, 1962 also obtained a pharmacist's license from the Commonwealth of Pennsylvania. Between 1957 and 1962 plaintiff was employed primarily as a pharmacist. At the present time he possesses valid New York and Pennsylvania pharmacist's licenses.

---

1. The New York Bank for Savings was the original student loan lender. The loans were apparently purchased by Wachovia Services, Inc., which in turn assigned them to NYSHESC. Defendant, Wachovia Services, Inc. has not appeared in this proceeding.

| | |
|---|---|
| Rent | $352.00 |
| Utilities | $ 30.00 |
| Food | $ 64.00 |
| Clothing | $ 15.00 |
| Miscellaneous | $ 25.00 |
| Total: | $486.00 |

From September, 1962 to February, 1970, plaintiff was employed as a teacher of library science at a New York City high school and then at a high school in Orange County, New York. In December, 1970, he received a Master's Degree in Library Science from Long Island University. Plaintiff is currently licensed as a New York State teacher, his New York City certification having expired.

Between February, 1970 and May, 1971 plaintiff was again employed as a pharmacist. In May, 1972, after having been unemployed for almost one year, he visited Spain where he enrolled in and completed several courses which were required prior to his enrollment in medical school. In June, 1972, plaintiff returned to Orange County, New York, where he was employed as a pharmacist until September, 1973. He then returned to Spain to embark upon his formal medical school education at the University of Granada. Between September, 1973 and October, 1981 plaintiff was a full-time medical student residing in Spain. He returned to Orange County, New York in January, 1982 after having received his medical degree.

4. Health. Plaintiff is 47 years old and is in good health. He has no physical or mental infirmities which would interfere with gainful employment.

5. Marital Status and Dependents. Plaintiff is married and has one child. Both his wife and child reside in Spain and are not dependent on him. His contact with them is limited to letters and occasional telephone calls. Plaintiff now resides with his mother in a two-bedroom apartment at Newburgh, New York. His mother is not dependent on him.

6. Assets. At the time of trial, plaintiff had no assets of substantial value. He owns two automobiles, a 1966 Chevrolet Bel Air and a 1968 Chevrolet Impala.

7. Employment, Income and Expenses. Plaintiff has been unemployed since returning to this country in January, 1982. Plaintiff's approximate monthly expenses are:

Plaintiff has no income. His monthly expenses are paid by his mother from her social security and food stamp benefits. He is not eligible to receive unemployment insurance and is in the process of applying for New York State public assistance benefits.

Plaintiff's medical degree from Spain does not confer the right to practice medicine. In order to become a licensed physician he would have to pass a certification examination given by the Educational Council for Foreign Medical Graduates (E.C.F.M.G.), secure and complete postgraduate hospital training and, finally, pass the New York State licensing exam. He alleges that he does not have sufficient funds to pay the cost of either an E.C.F.M.G. refresher course or the examination fees.

Plaintiff has, since January, 1982, sought employment in the fields of medicine, teaching, library science and pharmacology. He has not sought employment in other areas. He contends that, despite his academic and professional credentials, he is unable to obtain employment in the fields for which he is trained and has no prospects of obtaining such employment in the future.

### DISCUSSION

The dischargeability of student loan indebtedness is governed by Bankruptcy Code § 523(a)(8), 11 U.S.C. § 523(a)(8), which provides:

§ 523. Exceptions to discharge.

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a govern-

mental unit or a non-profit institution of higher education, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents; . . .

Under § 523(a)(8)(B) the debtor-plaintiff has the burden of proof by a fair preponderance of the evidence that he would suffer an "undue hardship" if the loan were excepted from discharge. *See In re Norman,* 25 B.R. 545, 9 BCD 1417 (Bkrtcy.S.D. Cal.1982).[2]

Prior to 1976, there existed no impediment to the discharge in bankruptcy of student loans. The precursor to present Code § 523(a)(8), § 439A of the Education Amendments of 1976, 20 U.S.C. § 1087-3,[3] was enacted in response to what Congress perceived as an abuse of the bankruptcy laws by students seeking to discharge student loans shortly after graduation. *See* S.Rep. No. 882, 94th Cong., 2d Sess., 32 (1976); H.R.Rep. No. 1232, 94th Cong., 2d Sess., 13–14 (1976), U.S.Code Cong. & Admin.News 1976, p. 4713.

The genesis of 20 U.S.C. § 1087-3 and Code § 523(a)(8) is found in § 4–506(a)(8)[4]

of the proposed Bankruptcy Act of 1973 contained in the Report of the Commission on the Bankruptcy Laws of the United States ("Commission Report"), H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Pt. II, 136 (1973). The Bankruptcy Commission, formed in 1970[5] to evaluate the then existing bankruptcy laws and to propose reform legislation, recommended that the discharge in bankruptcy of student loans be limited.

Examples of the abuse of the discharge in the case of educational loans have . . . come to the Commission's attention. Some individuals have financed their education and upon graduation have filed petitions under the Bankruptcy Act and obtained a discharge without any attempt to repay the educational loan and without the presence of any extenuating circumstance, such as illness. The Commission is of the opinion that not only is this reprehensible but that it poses a threat to the continuance of educational loan programs. (footnotes omitted)

Commission Report, H.R.Doc. No. 93–137, 93d Cong., 1st Sess., Pt. I, 176–177.

In drafting what ultimately became Code § 523(a)(8)(B), it was contemplated that the discharge of student loans on the ground of "undue hardship" would be found only in the rare case based on exceptional circum-

---

**2.** *But compare In re Yarber,* 19 B.R. 18, Bankr. L.Rep. (CCH) ¶ 69,064 (Bkrtcy.S.D.Ohio 1982), which appears to apply the "clear and convincing evidence" standard.

**3.** *§ 1087–3. Five-year nondischargeability of certain loan debts; effective date.*

(a) A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of the five year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents.

(b) Subsection (a) of this section shall be effective with respect to any proceeding begun under the Bankruptcy Act on or after September 30, 1977.

(Repealed November 6, 1978, Pub.L. 95–598, Title III, § 317.)

**4.** *§ 4–506. Exceptions from Discharge; Determination of Dischargeability and Liability on Nondischargeable Debt.*

(a) *Exceptions from Discharge.* A discharge extinguishes all debts of an individual debtor, whether or not allowable, except the following:

(8) any educational debt if the first payment of any installment thereof was due on a date less than five years prior to the date of the petition and if its payment from future income or other wealth will not impose an undue hardship on the debtor and his dependents; . . .

**5.** Senate Joint Resolution 88, Pub.L. 91–354, 91st Cong., 1st Sess. (1970).

stances. *See In re Kohn,* 5 BCD 419, 424, 20 CBC 994, 1006 (Bkrtcy.S.D.N.Y.1979).[6]

The term "undue hardship" is not defined in the Bankruptcy Code or its legislative history. Courts have uniformly required such a finding to be based on unique and extraordinary circumstances evidencing more than a *present* inability to repay the student loan indebtedness. *See, e.g., In re Norman,* 25 B.R. 545, 9 BCD 1417 (Bkrtcy.S. D.Cal.1982); *In re Lezer,* 21 B.R. 783 (Bkrtcy.N.D.N.Y.1982); *In re Brown,* 18 B.R. 219 (Bkrtcy.Kan.1982); *In re Rappaport,* 16 B.R. 615 (Bkrtcy.D.N.J.1981).

■ In *In re Lezer,* 21 B.R. 783 (Bkrtcy.N.D.N.Y.1982), this Court adopted a three-tiered test, developed in *In re Johnson,* 5 BCD 532 (Bankr.E.D.Pa.1979), in order to determine whether "undue hardship" exists. The first test, strictly mechanical, compares the debtor's present and estimated future financial resources with his present and projected expenses. If this computation reflects that the debtor is and will continue to be unable to repay both the student loan and maintain himself at a subsistence standard of living, the Court then examines whether the debtor has made a "good faith" effort to repay the loan, i.e., whether the debtor has attempted to minimize expenses and maximize resources, and whether his inability to repay the loan was due to factors beyond his control, i.e., whether the debtor's predicament is self-imposed. If the debtor satisfies both the "mechanical" and "good faith" tests, "undue hardship" has been established. However, where the Court determines that the debtor's predicament is self-imposed, a presumption against discharge arises. To rebut this presumption the debtor must next establish that his purpose in filing the bankruptcy petition was not to discharge the student loan debt and that he has not financially benefitted from the education made possible by the loan.

An examination of plaintiff's current resources and expenses evidences a *present* inability to pay the student loan indebtedness and to support himself at a subsistence level. He has no income whatsoever and relies on his mother for support. His application for public assistance benefits was pending at the time of trial. According to plaintiff, he has diligently searched for employment in the fields for which he was trained but simply has no prospects. He contends that due to his present financial predicament he will not be able to secure and complete the post-graduate hospital training necessary to become a licensed physician. Moreover, based on his unsuccessful search for employment in the fields of medicine, teaching, library science and pharmacology which commenced in January, 1982, he has no hope of ever finding employment in the fields for which he is trained and will, therefore, never be able to repay the loans. NYSHESC argues that plaintiff has only demonstrated a present inability to repay. It contends that the debtor should be able to obtain some employment in the foreseeable future and that his alleged "undue hardship" is self imposed.

■ Central to the debtor's contention that he is "unemployable" is the erroneous assumption that he need not seek employment in fields other than those for which he has received formal training. As stated in *In re Kohn,* 5 BCD 419, 424, 20 CBC 994, 1007–8 (Bankr.S.D.N.Y.1979):

It is not sufficient that an employable bankrupt be not at the time of suit employed in the area for which he was trained as a result of the loans now sought to be eliminated. So long as he can be employed in whatever area of endeavor, the bankrupt will not be heard to complain if the rewards of such position are less than he had hoped for while studying.

**6.** Quoting statements made at Hearings Before the Subcommittee on Improvement in Judicial Machinery of the Committee on the Judiciary of the United States Senate on S. 235 and S. 236, 94th Cong. 1st Sess., 27–28 (1975) and

Hearings Before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary on H.R. 31 and H.R. 32, 94th Cong., 1st Sess., 1092–93 (1976).

Similarly, *In re Price,* 1 CBC 2d 647, 649 (Bankr.D.Hawaii 1980), in holding that the debtor had not satisfied the "undue hardship" test, stated:

The Debtor is presently unemployed and on Department of Social Service and Housing assistance.... However, this does not mean that she will forever be unemployed. Even if she is not employed in the field in which she was trained, she can still seek other employment and obtain sufficient compensation for a comfortable living.

In the instant case, it is implausible that plaintiff, a highly educated individual with no physical or mental infirmity cannot obtain *any* gainful employment whatsoever, albeit such employment may be in fields for which he has received no formal training. Accordingly, this Court cannot accept plaintiff's contention that he will never be in a position to repay his student loan indebtedness. If plaintiff wishes to limit his employment search solely to those fields for which he received formal training, he has made an irresponsible decision so to limit himself and, accordingly, any resulting hardship is of his own making, self-imposed, and does not constitute "undue hardship" within the meaning of Code § 523(a)(8)(B). Such a situation does not evidence a "certainty of hopelessness" required for the discharge of student loans under § 523(a)(8)(B). *In re Briscoe,* 16 B.R. 128, 131, Bankr.L.Rep. (CCH) ¶ 68,483 at 80,157 (Bkrtcy.S.D.N.Y.1981). At most, plaintiff has demonstrated a present inability to repay.

Even assuming that the *Johnson* "mechanical" test had been satisfied,[7] plaintiff would not meet the "good faith" test since he has irresponsibly chosen not to seek employment in fields other than those for which he received formal training. Under *Johnson* the presumption would then arise that the student loan indebtedness is nondischargeable. In order to rebut this presumption of nondischargeability, plaintiff must establish that the dominant purpose in filing the bankruptcy petition was not to discharge the student loans and that he has not benefitted from the education they made possible. Since the student loans were the only debts listed in plaintiff's schedule of liabilities, and since plaintiff concedes that he filed his bankruptcy petition for the sole purpose of forestalling collection attempts, he cannot rebut the presumption.

## CONCLUSION

Debtor-plaintiff has not sustained his burden of proving that excepting these debts from discharge would impose an "undue hardship" within the meaning of Code § 523(a)(8)(B). Accordingly, the student loan debts owed to defendant NYSHESC are not discharged. SO ORDERED.

---

7. Since the Court cannot concur with plaintiff's conclusion that his present lack of income is a permanent situation, it is not possible accurately to estimate plaintiff's future resources for the purpose of the *Johnson* "mechanical" test on the basis of his present situation.