In re Cecilia R. **GOLDMAN**, Debtor.

Cecilia R. **GOLDMAN**, Plaintiff,

v.

**BANK OF NEW YORK**, New York State Higher Education Services Corporation, Defendants.

Bankruptcy No. 84 B 20383.
85 Adv. 6005

United States District Court,
S.D. New York.

April 16, 1985.

Nathan Horowitz, White Plains, N.Y., for Cecilia R. Goldman.

Barbara C. North, Albany, N.Y., for NYSHESC.

## DECISION ON APPLICATION TO DETERMINE DISCHARGEABILITY OF STUDENT LOAN

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor in this case under Chapter 7 of the Bankruptcy Code, Cecilia R. Goldman, seeks a determination that her student loan obligation be declared dischargeable because it imposes an undue hardship pursuant to 11 U.S.C. § 523(a)(8)(B). The New York State Higher Education Services Corporation ("NYSHESC"), a state agency that guaranteed the loan of $12,050 made by The Bank of New York, objects to the discharge on grounds that five years have not elapsed since the debtor's loan first came due and that repayment would not subject the debtor to undue hardship.

### FINDINGS OF FACT

1. The debtor filed with this court her petition for relief under Chapter 7 of the Bankruptcy Code on September 5, 1984.

2. During the period from 1976 through 1981, the debtor obtained $12,050.00 in student loans from the Bank of New York, which she promised to repay with interest at the rate of seven percent per annum beginning nine months after she left school or became less than a half-time student. The loans were guaranteed by NYSHESC, a state agency, in accordance with applicable provisions of state and federal law.

3. The debtor applied for the student loans in order to attend graduate school and obtain an MA degree in Humane Sciences. She received her B.S. degree in Education in 1966. She was unable to complete her graduate program because of illness which resulted in bleeding ulcers and the removal of a portion of her stomach. The debtor also suffers from arthritis of her right hand, for which surgery may be required. Additionally, the debtor has sustained substantial dental bills which are also related to her illness. Accordingly, the debtor withdrew from graduate school in 1982.

4. The debtor was employed as a case worker for St. Agatha of New York Foundling Hospital since 1973. She is presently earning a salary of $17,000 per year. She is 47 years of age, single and has no dependents. The debtor's bankruptcy petition reveals that she owns a 1979 Pontiac

Sunbird that she paid for in installments of $120 per month which have since been completed. When she purchased the automobile in 1979 her annual salary was approximately $13,000. In 1982 her annual salary was $15,800 and in 1983 her salary was $16,000 per year. Presumably her current $17,000 salary will increase in the years to come. Despite her medical expenses during the period between 1979 and 1983, the debtor was able to pay off her automobile loan, notwithstanding that her salary was less than it is today.

5. The debtor's budget reveals that her net take home pay each month is $1000.52, somewhat less than her current monthly expenses of $1114.80, which include food, clothing, medical bills, rent, utilities and miscellaneous items of routine maintenance. However, the difference is made up by part time extra work for two Saturdays per month.

6. The debtor telephoned NYSHESC in May of 1984, and requested a deferral of the required monthly payments. In June of 1984, NYSHESC approved a medical deferment and reduced the payment obligation to $79 per month to cover the accrual of interest. The debtor offered to pay $50 per month, which was refused by NYSHESC because this sum did not meet the interest accrual of $79 per month.

7. The debtor made several monthly payments as required under her loan agreement and also made several reduced payments of $79 per month, and then discontinued making payments. The debtor's obligation to NYSHESC is $13,270.62, with interest at the rate of seven percent per annum from February 8, 1985.

8. The debtor's general discharge which was granted in this case will eliminate debts for goods and services, credit card purchases and for loans other than the student loans in question, in the total sum of $13,004.29.

9. Although the debtor's health and consequential medical and dental bills place a strain on her financial resources she is, nevertheless, able to continue her employment at a salary of $17,000 per year. Her inability to fulfill financial commitments has been alleviated to some extent by the discharge of debts totalling $13,004.29. There has been no showing of hopelessness or exceptional circumstances as to justify a finding that repayment of the student loan in installments would subject the debtor to undue hardship.

## DISCUSSION

The governing statutory provision in this case is 11 U.S.C. § 523(a)(8)(B) [1] which provides that a student loan that becomes due within five years after the repayment installments commence is not dischargeable unless repayment "will impose an undue hardship on the debtor and the debtor's dependents...." The debtor has the burden of proving that repayment would constitute an undue hardship. *Panteli v. New York State Higher Education Services Corp., (In re Panteli)* 41 B.R. 856, 858 (Bkrtcy.S.D.N.Y.1984); *In re Reid*, 39 B.R. 24, 26 (Bkrtcy.E.D.Tenn. 1984); *In re Holzer*, 33 B.R. 627, 630 (Bkrtcy.S.D.N.Y.1983); *In re Lezer*, 21 B.R. 783, 787–88 (Bkrtcy.N.D.N.Y.1982). As stated in *In re Brunner*, 46 B.R. 752 (S.D.N.Y.1985), "the debtor has been required to demonstrate not only a current inability to pay but additional circumstances which strongly suggest that the current inability to pay will extend for a significant portion of the repayment period of the loan." This requirement overrides the "fresh start" goal of bankruptcy which the debtor did achieve through the discharge of her debts, totalling $13,004.29, for goods and services, credit card purchases and

---

**1.** *§ 523(a)*

A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made

under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

loans other than the student loans in question.

The underlying policy which supports the nondischargeability of student loans was described by District Court Judge Haight in *In re Brunner*, 46 B.R. 752 as follows:

> Because of this enlightened social policy, those whose past work or credit record might foreclose them from the commercial loan market are able to obtain credit at subsidized rates to advance their education. Those who might obtain loans only at exhorbitant rates are similarly able to obtain low cost, deferred loans. In return for this largesse—and it is undeniable that guaranteed student loans have extended higher education to thousands who would otherwise have been forced to forego college or vocational training—the government exacts a *quid pro quo.* Through § 523(a)(8) it commits the student to repayment regardless of his or her subsequent economic circumstances. In return for giving aid to individuals who represent poor credit risks, it strips these individuals of the refuge of bankruptcy in all but extreme circumstances. *See Johnson v. Edinboro State College*, 728 F.2d 163, 164 (3d Cir.1984) (Section 523(a)(8) represents a conscious Congressional choice to override the normal "fresh start" goal of bankruptcy). This is a bargain each student loan borrower strikes with the government. Like all bargains, it entails risk. It is for each student individually to decide whether the risks of future hardship outweigh the potential benefits of deferred-payment education.

In the instant case, the debtor was able to pay off her $120 per month automobile installments at a time when her medical bills were at their highest and when her salary was less than the $17,000 per year that she now earns. She is single and has no dependents. Moreover, her discharge in bankruptcy has relieved her of financial obligations totalling $13,004.29. Her medical condition does not prevent the debtor from continuing to work and to receive yearly salary increases. Although repayment of the student loans may cause a hardship to the debtor, her statement of affairs reveals that her current income and expenses will support a "minimal standard of living" for herself and that there are no exceptional circumstances from which to conclude that repayment of the student loan installments would subject the debtor to undue hardship.

## CONCLUSIONS OF LAW

1. The debtor has not met her burden of proving that her obligation to repay her student loans will impose an undue hardship on her within the meaning of 11 U.S.C. § 523(a)(8)(B).

2. The debtor is not entitled to a hardship discharge. Accordingly, her complaint is dismissed.

SUBMIT ORDER on notice.