In re Jerry L. ROBERSON, Debtor.

Jerry L. ROBERSON, Plaintiff,

v.

ILLINOIS STUDENT ASSISTANCE COMMISSION.

No. 92 C 20016.

United States District Court,
N.D. Illinois, W.D.

April 7, 1992.

David F. Black, UAW–Chrysler Legal Services Plan, Belvidere, Ill., for plaintiff, debtor.

Mark Edward Wilson, Ill. Atty. Gen. Office, Chicago, Ill., for defendant.

## ORDER

REINHARD, District Judge.

## INTRODUCTION

Debtor, Jerry L. Roberson, filed an adversary complaint to determine the dischargeability of his student loan obligation under 11 U.S.C. § 523(a)(8)(B), claiming that repayment of the obligation would cause him undue hardship.[1] Defendant, Illinois Student Assistance Commission (ISAC) objected, contending that repayment of the loan would not work an undue hardship on debtor. The bankruptcy judge ruled the debt to be non-dischargeable. Debtor brings this appeal.

## FACTS

Debtor graduated from high school in 1976. Subsequently, he entered the military and served in the army from 1976–1979, when he received an honorable discharge. While in the military, debtor worked as a power generator equipment repairman/operator, a petroleum clerk and a guard.

Debtor enrolled at Kishwaukee Community College in 1980, eventually completed a two-year program and received an Associate of Sciences degree. This was financed through two student loans. The curriculum debtor pursued was similar to one which would enable someone to teach vocational arts at the junior high school level. Debtor took courses in safety, quality control, woodworking, machining, metrology, drafting, electricity and welding. However, debtor geared his coursework more towards manufacturing. Debtor would need at least 20–24 additional credit hours of coursework to be qualified to teach.

In the fall of 1983, debtor enrolled at Northern Illinois University and graduated, in May of 1986, with a Bachelor of Science degree in industrial technology. Again, debtor financed his education through student loans. Debtor had been making payments on the loans until his financial difficulties arose.

Debtor began working as an assembler at Chrysler Corporation in 1984. He continued his employment while attending school, and continued working at Chrysler after graduation, as the job paid higher wages than he would, conceivably, be able to earn elsewhere, despite his college degree. Debtor's position at Chrysler required no higher education. No additional benefits, such as a job upgrade, were given debtor because of his degree. He earned approximately $33,000 in wages in 1988 and $30,000 in 1989. He was laid off in February of 1990.

On April 6, 1990, debtor's marriage was judicially dissolved. Further, debtor was ordered to pay child support in the amount of $121.60 per week for his two children. His former wife was awarded possession of the marital residence and an automobile.

Debtor has not had steady employment since his termination from Chrysler. His 1990 income tax return showed approximately $6,000 of income ($3,265 in unemployment benefits and $2,846 in wages). Debtor has actively sought employment, but has been unable to find any. He has not rejected any job offers.

On September 28, 1990, debtor filed his voluntary petition for relief under Chapter

---

1. Debtor also claimed that the debt was dischargeable under 11 U.S.C. § 523(a)(8)(A), but the trial judge's ruling with regard to this contention is not at issue on this appeal.

7 of the Bankruptcy Code. His monthly expenses were estimated at $680 and total monthly income at $0. Debtor listed debts of $34,395.16 and property of $18,357. His student loan debt is listed at $7,613.52. Further, his property included an interest of $11,250 in his former home, which was subject to the judgment for dissolution of marriage until his two-year old child reaches the age of 18.

Debtor suffers from back problems and from "carpal tunnel syndrome," a wrist condition. He currently lives in a $40 per week rented room, which has no private bathroom or cooking facilities. He testified that he had to sell his automobile and some personal items in order to pay for current needs.

Further complicating matters, debtor was jailed from May 12 to August 10, 1991, apparently for failure to pay child support. He also had his driving privileges revoked pursuant to a conviction for driving under the influence of alcohol, and is not eligible to apply for a new license until 1993. According to debtor, his loss of driving privileges severely handicaps his chances of finding employment.

Debtor filed this action to discharge his student loan obligation under 11 U.S.C. § 523(a)(8). The bankruptcy judge, specifically following the case law set forth in *In re Johnson*, 5 Bankr.Ct.Dec. (CRR) 532 (E.D.Pa.1979), and *In re Conner*, 89 B.R. 744 (Bkrtcy.N.D.Ill.1988), found that the debt was non-dischargeable, but did order a two-year deferment in the collection of the debt to allow debtor time to reorganize financially. Specifically, he applied three different tests in determining dischargeability: a mechanical test, a good faith test and a policy test.

Using a mechanical test, the bankruptcy judge compared debtor's present and future income with the debtor's reasonably anticipated necessary expenses in order to determine whether it was reasonable to expect him to repay any of his student loan obligation in the reasonably foreseeable future. The bankruptcy judge found that debtor's assets were minimal and his greatest asset, his interest in his former marital residence, was limited. He further found debtor to be unemployed with minimal prospects for future employment, as he had no transportation and certain medical impediments, and that debtor's only consistent source of income was government assistance. The bankruptcy judge found undue hardship under the mechanical test.

The court next applied a good faith test. In finding debtor's good faith, the bankruptcy judge looked to the following factors and found that debtor made serious efforts to obtain employment, minimize expenditures and maximize resources; no evidence was presented which suggested that debtor's dominant reason for filing the bankruptcy was to eradicate student loans; debtor has not benefitted financially from his education; and that the debts accrued just over two years before the filing of the bankruptcy.

The bankruptcy judge next applied a policy test and found that, while debtor is not trying to "stick it to the taxpayers" and avoid the student loan obligation by filing the petition, he may receive some financial benefit from his "loaned" education in the future. Accordingly, debtor's obligation was found not to be dischargeable. Debtor appeals.

## DISCUSSION

Section 523(a)(8)(B) of title 11 provides, in pertinent part:

   (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

    \*    \*    \*    \*    \*    \*

   (8) for an educational loan made ... by a governmental unit ... unless—

    \*    \*    \*    \*    \*    \*

   (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8)(B).

■ Under this section, it is clear that a court can excuse a debtor in whole or in part from having to pay an otherwise non-dischargeable debt if the court finds that

repayment would work an undue hardship on a debtor and a debtor's dependents. *In re Conner*, 89 B.R. 744, 746–47 (Bkrtcy. N.D.Ill.1988); *In re Lezer*, 21 B.R. 783, 787 (Bkrtcy.N.D.N.Y.1982). However, there is a strong legislative and judicial policy against allowing a debtor to use bankruptcy to escape repaying student loans. *Conner*, 89 B.R. at 747.

Neither the Bankruptcy Code nor the legislative history to 11 U.S.C. § 523(a)(8) define what constitutes undue hardship. *Conner*, 89 B.R. at 747; *In re Courtney*, 79 B.R. 1004, 1011 (Bkrtcy.N.D.Ind.1987). The case law, however, has identified several tests which may be applied in determining what constitutes undue hardship. *See Conner*, 89 B.R. at 747. One of the more popular is the tripartite test set forth in *In re Johnson*, 5 Bankr.Ct.Dec. (CRR) 532 (E.D.Pa.1979). Several bankruptcy courts, including the Northern District of Illinois, have applied the *Johnson* standard. *Conner*, 89 B.R. at 747; *Lezer*, 21 B.R. at 788. *But see Courtney*, 79 B.R. at 1013 (the court applied the mechanical and good faith tests, as set forth below, but specifically rejected the application of the policy test). Indeed, the bankruptcy judge below expressly followed *Conner*, which applied this multi-tier analysis.

■ This court feels that the *Johnson* analysis is the appropriate standard to follow. It is sensitive to the many causes of undue hardship and to the underlying intent of Bankruptcy Code § 523(a)(8)(B). *Conner*, 89 B.R. at 747–48; *Lezer*, 21 B.R. at 788.

The *Johnson* analysis provides as follows:

"(1) Mechanical Test: The court must ask: Will the debtor's future financial resources for the longest foreseeable period of time allowed for repayment of the loan, be sufficient to support the debtor and his dependent at a subsistence or poverty standard of living, as well as to fund repayment of the student loan? If this question is answered affirmatively, discharge of the student loan must be denied. If answered negatively, then the court must apply the good faith test:

(2) Good Faith Test: Here, the court asks two questions:

(a) Was the debtor negligent or irresponsible in his efforts to minimize expenses, maximize resources, or secure employment?

(b) If 'yes,' then would lack of such negligence or irresponsibility have altered the answer to the mechanical test?

*If the answer to the first part of the good faith test is no, then the debtor should be discharged* of the obligation to repay his student loan. However, if the answer to both parts of the good faith test are 'yes,' then a presumption against discharge is established—which may be rebutted by a negative answer to the third and final test.

(3) ... Policy Test: The court must ask: Do the circumstances—*i.e.*, the amount and percentage of total indebtedness of the student loan and the employment prospects of the petitioner indicate:

(a) That the dominant purpose of the bankruptcy petition was to discharge the student debt, or

(b) That the debtor has definitely benefitted financially from the education which the loan helped to finance?

If the answer to both parts of this question is 'no,' then the debtor should be discharged from his student loan obligation. If the court answers 'yes' to either part of the question, then discharge should be denied."

*Johnson*, 5 Bankr.Ct.Dec. (CRR) at 544 (emphasis added).

■ It is evident that if, under the *Johnson* test, a court finds the debtor to have undue hardship under the mechanical test and has satisfied the good faith test, its analysis should end at that point. *Lezer*, 21 B.R. at 789–90; *Johnson*, 5 Bankr.Ct. Dec. (CRR) at 544. Only if a debtor does not satisfy the good faith test does a court proceed to the policy portion of the analysis. *Courtney*, 79 B.R. at 1008; *Lezer*, 21 B.R. at 789; *Johnson*, 5 Bankr.Ct.Dec. (CRR) at 542, 544. *See also Conner*, 89 B.R. at 749 (the factual circumstances of

this case are consistent with the *Johnson* analysis in that debtor failed good faith test and court then applied policy test).

In the court below, the bankruptcy judge specifically found undue hardship under the mechanical test and that debtor satisfied the good faith test. Accordingly, the analysis should have terminated at that point. The bankruptcy judge erred in proceeding to the policy portion of the analysis.

■ A district court reviews the factual findings of the bankruptcy court under a clearly erroneous standard, but reviews conclusions of law *de novo*. Bankruptcy Rule 8013; *In the Matter of Newman*, 903 F.2d 1150, 1152 (7th Cir.1990). Accordingly, this court will not set aside the factual findings of the bankruptcy judge unless they are clearly erroneous, but will review his legal conclusions *de novo*. The underlying facts found by the bankruptcy judge are not clearly erroneous, and they will be applied where appropriate.

■ As to the mechanical test, the bankruptcy judge compared debtor's anticipated expenses with his present and future anticipated income. Further, he considered such factors as debtor's need for transportation when he regains his driving privileges and the medical problems associated with debtor's wrist. Debtor also has child support obligations, which should be taken into consideration. Therefore, the bankruptcy judge's finding of undue hardship under the mechanical test is amply supported. *See In re Clinton*, 133 B.R. 96, 98 (Bkrtcy. N.D.Ohio 1991); *Conner*, 89 B.R. at 748; *Lezer*, 21 B.R. at 788.

■ In determining whether debtor meets the good faith requirement set forth above, this court will accept the bankruptcy judge's findings of fact that debtor has continued to seek employment, minimize expenses and maximize resources. Debtor has not been irresponsible or negligent in his effort to seek employment, minimize expenses and maximize resources. Debtor's budget lists no unreasonable expenses or luxuries. He currently lives in a room, rented by the week, which has no private

bathroom or cooking facilities. Thus, he satisfies the good faith portion of the analysis notwithstanding ISAC's contention to the contrary. *See Clinton*, 133 B.R. at 98; *Lezer*, 21 B.R. at 789.

■ ISAC contends that the trial judge found that debtor's driving under the influence prosecutions, which led to his transportation problems, were self-inflicted and should therefore preclude a finding of good faith. It must be noted that the bankruptcy judge did not include this factor in his good faith analysis, but noted it later in his order. The bankruptcy judge further cited *In re Albert*, 25 B.R. 98, 102 (Bkrtcy. N.D.Ohio 1982), which stated, "[w]ithout judging whether or not a past addiction is or is not a factor beyond the Debtor's reasonable control, this Court does not believe that those circumstances were of the type contemplated by Congress when the Code was written." This court agrees. No cases have been cited which hold that a debtor's driving under the influence conviction may be considered self-inflicted so as to prevent a finding of good faith and preclude the dischargeability of student loans.

Accordingly, under the standard set forth above, debtor is entitled to a discharge of his student loan obligations. We note, too, that had this court applied the test set forth in *Courtney*, 79 B.R. 1004, as argued by debtor, the result would be the same.

## CONCLUSION

For the above reasons, the court concludes that the bankruptcy court was correct in its decision to apply the tripartite test set forth in *Conner*, 89 B.R. 744, and *Johnson*, 5 Bankr.Ct.Dec. (CRR) 532. However, the analysis under that test was improperly applied. Accordingly, the order of the bankruptcy court is reversed.